# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
June 14, 2012

Lyle W. Cayce
Clerk

No. 10-51200

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

SHAHID IQBAL, also known as Shawn,

Defendant-Appellant

Appeal from the United States District Court
for the Western District of Texas

Before JONES, Chief Judge, and OWEN and HIGGINSON, Circuit Judges.

EDITH H. JONES, Chief Judge:

Appellant Shahid Iqbal ("Iqbal") pled guilty to one count of structuring financial transactions to evade federal reporting requirements. The Department of Homeland Security ("DHS") subsequently attempted to introduce Iqbal's Presentence Investigation Report ("PSR") in a removal proceeding; the immigration court refused to admit the PSR without the district court's approval, which DHS then sought. Iqbal in turn requested criminal contempt sanctions against the DHS attorneys who pursued disclosure of his PSR. The district court granted DHS's motion after redacting much of Iqbal's personal information and denied Iqbal's sanctions request. We AFFIRM.

No. 10-51200

## BACKGROUND

Iqbal and his brother, Tariq Majeed ("Tariq"), are Pakistani natives. Tariq came to the United States and set up an illegal gambling operation in Austin, Texas, some of the proceeds of which he laundered through structured transactions wired to Iqbal in Pakistan. Iqbal, unaware that Tariq's funds came from an illegal source, believed Tariq structured these transfers to evade U.S. income taxes. Iqbal later immigrated to the United States in August 2004.

Federal agents discovered Tariq's gambling operation. Agents subsequently arrested Iqbal, charging him with structuring and aiding in the structuring of a financial transaction to evade reporting requirements in violation of 31 U.S.C. § 5324(a)(3) and (d), 31 C.F.R. § 103.11, and 18 U.S.C. § 2. Iqbal pled guilty to one count of structuring transactions to evade reporting requirements in April 2007 and was sentenced, *inter alia*, to twelve months' imprisonment. While Iqbal's PSR both detailed Tariq's gambling operations and implicated Iqbal as a participant, the district court specifically found at the time of sentencing that Iqbal did not knowingly involve himself in Tariq's enterprise until after he immigrated to the U.S. Iqbal was neither charged with nor convicted of involvement in Tariq's gambling operation.

DHS initiated removal proceedings against Iqbal in October 2008 on the theory Iqbal immigrated to engage in unlawful commercialized vice through Tariq's illegal gambling enterprise. DHS attempted to introduce Iqbal's PSR to demonstrate that Iqbal immigrated to the U.S. to assist in Tariq's gambling operations notwithstanding the district court's contrary finding. Iqbal's immigration counsel objected to the immigration court's consideration of the PSR without the district court's consent. The immigration court ultimately sustained Iqbal's objection, requiring that DHS seek permission from the district court to unseal Iqbal's PSR before admitting it into evidence.

No. 10-51200

DHS subsequently filed a motion before the district court to release Iqbal's PSR, including the portions referencing Tariq's gambling operations, after redacting a section including personal information on Iqbal and his family. DHS relied on the balancing framework for determining a "compelling, particularized need for disclosure" that was articulated by this court in *United States v. Huckaby*, 43 F.3d 135, 139 (5th Cir. 1995). The government, having agreed to redact Iqbal's personal information, contended that the public's interest in preventing an ongoing fraud on the immigration laws outweighed Iqbal's remaining privacy interests. Iqbal argued that DHS should instead establish its immigration case against Iqbal through various witnesses, including the investigating officer and Iqbal's co-defendants. When combined with Iqbal's substantial privacy interests, this alternate avenue to make its case, Iqbal urged, defeated DHS's claim of a particularized need to disclose Iqbal's PSR. Iqbal further requested the district court to sanction DHS attorneys for filing Iqbal's sealed PSR with the immigration court without the district court's permission. The district court found our *Huckaby* framework instructive and, balancing the *Huckaby* interests, released the redacted PSR to the immigration court.[1] The court summarily denied Iqbal's sanctions request.

Iqbal appeals, contending that *Huckaby* is the proper framework for evaluating release of Iqbal's PSR, but the district court abused its discretion in concluding DHS demonstrated a particularized need in light of its other means to establish Iqbal's immigration violation. Iqbal further presses his sanctions argument against DHS attorneys.

---

[1] The court ordered redaction of the PSR's Part C, "Offender Characteristics," and Iqbal's objections thereto, and confined disclosure to confidential disclosure only in the San Antonio immigration court.

No. 10-51200

## STANDARD OF REVIEW

We review the district court's disclosure of a presentence report for abuse of discretion. *Huckaby*, 43 F.3d at 138. We similarly review a district court's decision whether to impose sanctions for abuse of discretion, reviewing the district court's underlying factual findings for clear error. *Brown v. Oil States Skagit Smatco*, 664 F.3d 71, 76-77 (5th Cir. 2011).

## DISCUSSION

The question in this case is under what circumstances government lawyers may release a convicted defendant's PSR to immigration authorities for use in subsequent immigration proceedings. Federal Rule of Criminal Procedure 32 requires preparation of a PSR in most circumstances, but, except for (a) requiring confidentiality until the defendant has been convicted or pled guilty and (b) entitling the defendant to the report before sentencing, provides no guidelines for either the confidentiality or disclosure of the PSR. FED. R. CRIM. P. 32(c), (e). PSR confidentiality instead derives from judicial practice, reflecting "powerful policy considerations" supporting a presumption against disclosure. *Huckaby*, 43 F.3d at 138.

This court examined the three policy considerations underpinning PSR confidentiality in *Huckaby*. "First, the defendant has a privacy interest in the [PSR] because it reveals not only details of the offense but, in the broadest terms, 'any other information that may aid the court in sentencing[.]'" *Id*. This can include the defendant's physical, mental, and emotional condition, prior criminal history (including uncharged crimes), personal financial information, educational status, and more. *Id*. "That the defendant has . . . been convicted of a crime does not require the dissemination of his entire personal background in the public domain." *Id*. Further, PSRs, not subject to judicial rules of evidence, may contain errors; while Rule 32 provides a defendant an opportunity to correct these errors, a PSR is rarely revised to remove misinformation. *Id*.

No. 10-51200

Second, PSRs often rely on confidential sources in gathering information about the defendant's involvement in criminal activity; regularly breaching the PSR's confidentiality could severely compromise the government's access to information. *Id.* Finally, the court relies heavily on the PSR to impose a just sentence. If the defendant or cooperating third parties could reasonably fear the regular release of PSR-gathered information, it could "stifle or discourage that vital transmission of information by defendants" and third parties, thereby hampering the court's ability to impose a sentence consistent with the Sentencing Guidelines. *Id.*

But as this court explained in *Huckaby*, neither the policy of confidentiality nor its underlying considerations are absolute. The release of a PSR is permitted in whole or part when the moving party can show a "compelling, particularized need for disclosure" to meet the ends of justice. *Id.*; *see also United States v. Charmer Indus., Inc.*, 711 F.2d 1164, 1174-75 (2d Cir. 1983). When a party shows a compelling need for disclosure in pursuit of justice, the district court may disclose those portions of the report "directly relevant to the demonstrated need." *Huckaby*, 43 F.3d at 138.

Although not directly on point, *Huckaby* supplies a reasonable framework for analyzing PSR releases to immigration authorities. Iqbal attacks the district court's order from both sides of *Huckaby* — arguing that DHS failed to demonstrate a compelling, particularized need as well as that the *Huckaby* factors required maintaining the PSR's confidentiality. DHS's proffered justification of preventing fraud on U.S. immigration laws is clearly a compelling need toward the ends of justice. Indeed, PSR's generally contain language indicating that "[d]isclosure of this [PSR] to the Federal Bureau of Prisons and re-disclosure . . . is authorized by the United States District Court solely to assist administering the offender's prison sentence . . . and other limited purposes, including deportation proceedings." This standard advisory, which was present

5

in Iqbal's PSR, attests to the government's need to share uniquely available criminal conviction information, when appropriate, with immigration officials. Furthermore, in contrast to *Huckaby* and several other requests for *public* release, DHS here requested the selective release of Iqbal's PSR to the immigration judge for the limited purpose of Iqbal's removal proceedings — and after a substantial redaction of Iqbal's individual information. We can easily conclude DHS's request in these circumstances was in furtherance of a compelling, particularized need.

Two of the three *Huckaby* factors also prove unproblematic. Neither Iqbal nor the government expresses concern that release of Iqbal's report to an immigration judge in removal proceedings will compromise confidential informants or other governmental access to information. Iqbal contends the third factor — free flow of information to the court in order to impose a just sentence — weighs against disclosure. Given the large number of aliens annually placed into removal proceedings for federal criminal convictions, release of PSR's for immigration purposes will generally deter cooperation with PSR-related inquiries and interviews. We cannot agree. The district court restricted the PSR's use to proceedings only against *Iqbal* and in confidence. In *Huckaby*, in contrast, release was approved to the public at large. If deterrence of cooperation with authorities was not considered sufficient to block public release of a PSR, it cannot suffice under the limited disclosure ordered here.

The first factor, Iqbal's privacy concerns and the potential for misleading or inaccurate information, is somewhat closer on the facts of this case. During sentencing, Iqbal vigorously contested the inclusion of multiple statements in the PSR, including his participation in Tariq's gambling ring, his knowledge of illegal activity prior to entering the U.S., and the PSR's calculation of the amount of laundered funds. The district court specifically found that Iqbal had no knowledge of Tariq's illegal enterprise before Iqbal entered the U.S. In

*Huckaby*, the defendant did *not* challenge the accuracy of the PSR's information, as Iqbal clearly, and understandably, does. *Huckaby*, 43 F.3d at 139.

But the inaccuracies are, in the end, not cause for concern. The sentencing court's rulings favoring Iqbal on PSR objections are matters of public record. The court's redactions eliminated the possibility that other embarrassing or personal information would come to light.[2] These circumstances lead us to conclude the district court did not abuse its discretion in holding that the public interest in disclosure of Iqbal's redacted PSR to the immigration judge outweighed his remaining privacy interest against the dissemination of inaccurate information.

Iqbal's request for contempt proceedings against DHS's attorneys, however, is without merit. Federal courts may punish contemnors criminally, through fines or imprisonment, for breaking their lawful orders. 18 U.S.C. § 401(3). But criminal contempt requires a reasonably specific order, a contemptuous act violating that order, and a willful, contumacious, or reckless state of mind. *United States v. Allen*, 587 F.3d 246, 255 (5th Cir. 2009); *United States v. Landerman*, 109 F.3d 1053, 1068 (5th Cir. 1997). Notwithstanding the traditional judicial rule mandating confidentiality except for a compelling, particularized need in the ends of justice, Iqbal's PSR, like many PSRs, contains a disclaimer indicating that "re-disclosure [of the PSR] . . . is authorized by the United States District Court solely to assist administering the offender's prison sentence . . . and other limited purposes, including deportation proceedings." Though the district court properly sealed the PSR, and the immigration court

---

[2] District courts rarely disagree with or redact PSRs, often adopting their factual findings in full. Further, defendants have an opportunity to challenge any factually incorrect information contained in PSRs, and district courts must specifically resolve any disputed portion of the PSR. FED. R. CRIM. P. 32(i)(3)(B). The circumstances under which a defendant could validly object to court-approved release consistent with *Huckaby* of his PSR for use by an immigration court against him would therefore be rare.

correspondingly properly required district court approval to unseal the report, DHS's attorneys did not behave contumaciously in relying on this disclosure in attempting to introduce the PSR to the immigration judge without the district court's permission. Without the willful violation of a clear order, the district court properly declined to hold the DHS attorneys in contempt.

## CONCLUSION

The district court did not abuse its discretion in applying the *Huckaby* factors, nor did it err in evaluating and balancing those factors. Further the court did not abuse its discretion in declining to initiate contempt proceedings, as DHS's attorneys did not contumaciously violate a clear order. We therefore AFFIRM the district court's orders.

**AFFIRMED.**