RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 16a0185p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

In re: MORNING SONG BIRD FOOD LITIGATION.

———————————————————

LAURA CYPHERT; MILT CYPHERT; BARBARA COWIN; ELLEN LARSON; DAVID KIRBY,

        *Plaintiffs-Appellants,*

  *v.*

THE SCOTTS MIRACLE-GRO COMPANY,

        *Defendant-Appellee.*

No. 15-3943

———————

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 2:12-cr-00024—James L. Graham, District Judge.

Argued:  April 27, 2016

Decided and Filed:  August 4, 2016

Before:  SUHRHEINRICH, McKEAGUE, and DONALD, Circuit Judges.

———————

## COUNSEL

**ARGUED:**  Jason Forge, ROBBINS GELLER RUDMAN & DOWD LLP, San Diego, California, for Appellants.  Jeffrey J. Jones, JONES DAY, Columbus, OH, for Appellee.  **ON BRIEF:**  Jason Forge, Eric Alan Isaacson, Rachel L. Jensen, ROBBINS GELLER RUDMAN & DOWD LLP, San Diego, California, Amanda M. Frame, ROBBINS GELLER RUDMAN & DOWD LLP, San Francisco, California, Alex R. Lumaghi, DOWD & DOWD P.C., St. Louis, Missouri, John J. Driscoll, THE DRISCOLL FIRM, P.C., St. Louis, Missouri, for Appellants.  Jeffrey J. Jones, JONES DAY, Columbus, Ohio, for Appellee.

     SUHRHEINRICH, J., delivered the opinion of the court in which McKEAGUE, J., joined.  DONALD, J. (pp. 22–24), delivered a separate dissenting opinion.

1

---

**OPINION**

---

SUHRHEINRICH, Circuit Judge.  This appeal raises the issue of whether a district court must disclose letters containing presentence objections prepared in a criminal case to a third party for use in a related civil litigation.  We must decide what legal standard governs a request for disclosure of presentence objections and determine whether the Plaintiffs have satisfied that standard in this case.

Plaintiffs-Appellants are five putative class members in a California lawsuit seeking to represent consumers that purchased wild bird food treated with unapproved pesticides by Defendant-Appellee, the Scotts Miracle-Gro Company ("Scotts").  In gathering evidence to support their civil claims, Plaintiffs asked the district court to release two sets of objections, attached to the presentence report ("PSR"), from Scotts's criminal case in the Southern District of Ohio.  The district court denied Plaintiffs access to the objections, holding that neither the First Amendment nor the common law entitled Plaintiffs to the documents.  Instead, the district court treated the objections the same as the PSR, which carries a presumption of confidentiality that falls outside the First Amendment's and the common law's rights of public access.  Plaintiffs appeal, contending that the district court incorrectly subjected the objections to the same standard of confidentiality as the PSR itself and that, in any event, they have demonstrated a special need for the objections sufficient to overcome confidentiality concerns.  Because the district court applied the correct legal standard to Plaintiffs' request for disclosure and because it did not abuse its discretion in ruling that Plaintiffs failed to show special need, we affirm.

## I. BACKGROUND

In January of 2012, the government charged Scotts in the Southern District of Ohio with one misdemeanor count of pesticide misuse in violation of 7 U.S.C. § 136j(a)(2)(G) ("the criminal case").[1]  In the information charging Scotts, the government alleged that Scotts sold approximately 73 million units of wild bird food treated with pesticides unapproved for

---

[1]Scotts was also charged with several other counts unrelated to the present litigation.

application to bird food. Scotts pled guilty to the pesticide misuse violation and admitted the facts in the information under a Rule 11(c)(1)(C) plea agreement. The plea agreement included a sentencing stipulation under which Scotts would pay a penalty of $4 million and make a charitable donation of $500,000. The court accepted Scotts's guilty plea but deferred acceptance of the plea agreement, along with its stipulated sentence, until the sentencing hearing.

Prior to sentencing, United States Probation Officer Schal Boucher prepared a PSR on Scotts and submitted it to the court on June 13, 2012. The government filed objections to the PSR with Officer Boucher in a June 14, 2012 letter. In its letter, the government objected to a statement in the PSR addressing whether any birds died as a result of Scotts's tainted bird food. Scotts opposed the government's objections in a letter sent to Officer Boucher on June 18, 2012, arguing that the PSR's contents were accurate as stated. These two letters are the documents that Plaintiffs seek on appeal. We refer to these two documents as objections.

Officer Boucher drafted a letter summarizing the government's and Scotts's objections and submitted it to the court as a "Supplemental Addendum to the Presentence Report." Boucher attached the government's and Scotts's letters to the addendum for the court's review. The court then held an *in camera* conference to discuss and rule on the government's objections to the PSR.

Shortly thereafter, the court held the sentencing hearing. The court began by acknowledging the stipulated sentence in Scotts's plea agreement and describing its duty to independently confirm the appropriateness of the sentence reached by the parties. Thus, in assessing the nature and circumstances of the offense, the court commented on whether Scotts's pesticide misuse caused actual harm to birds. Although the court noted the disagreement between the government and Scotts on this issue, the court determined that it did not need to resolve the dispute over actual harm "because Scotts admits the violation" and "the Scotts violation is not dependent upon any harm having been done." The court did conclude, however, that "there was certainly a threat of harm." The court accepted the plea agreement and imposed the stipulated sentence of $4.5 million in criminal penalties and charitable donations.

Plaintiffs filed a class action against Scotts in the Southern District of California ("the California action"), alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") and various state laws based on Scotts's sale of bird food treated with unapproved pesticides. After filing the complaint, Plaintiffs sent a Freedom of Information Act ("FOIA") request to Officer Boucher for Scotts's PSR and other communications generated during the presentence investigation in Scotts's criminal case. Officer Boucher notified Plaintiffs that the Probation Office could not release any records without court permission and advised Plaintiffs to send a subpoena for the desired records directly to the court. Officer Boucher also notified then-Chief Judge Dlott of Plaintiffs' records request. Chief Judge Dlott, in turn, referred the matter to the sentencing judge in Scotts's criminal case, Judge Graham, based on the Southern District of Ohio's local rules regarding records requests.

Plaintiffs later filed a motion to certify the class in the California action. The motion for class certification theorized that Scotts's failure to disclose its treatment of the bird food with unapproved pesticides would cause a reasonable consumer, and did in fact cause the named plaintiffs, to purchase bird food they otherwise would not have purchased. Scotts opposed the certification motion with expert testimony that its bird food presented no significant risk of harm to birds and that many consumers would have purchased the bird food even had the pesticide use been disclosed. Plaintiffs' motion for class certification remains pending.

Plaintiffs initiated the present case ("the Ohio action") by sending a letter to Judge Graham, the sentencing judge in Scotts's criminal case. The letter requested disclosure of Scotts's "presentence investigation reports and communications that were generated during the course of criminal proceedings." Plaintiffs renewed their request for the PSR and presentence communications in a second letter submitted to Judge Graham two months later.

Meanwhile, Scotts discovered that it had inadvertently produced unredacted copies of the objections from the criminal case in the course of discovery in the California action. Scotts alerted Plaintiffs of its mistaken disclosure, explaining that the inadvertently produced documents were protected from disclosure under the Southern District of Ohio's local rules and applicable federal law. Scotts requested that Plaintiffs destroy the unredacted documents. Plaintiffs instead submitted the written objections under seal to the California court in two

separate filings—first, in an application for leave to submit the objections as newly discovered evidence in support of class certification, and second, in a request to the magistrate judge for authorization to use the inadvertently produced objections.

Plaintiffs also provided the Ohio court a copy of the first California filing, along with sealed copies of the unredacted objections. Scotts filed a motion in the Ohio action to keep the objections under seal. The government also filed a motion urging the Ohio court to deny Plaintiffs access to the PSR and related documents. In the meantime, the magistrate judge in the California action denied Plaintiffs' motion to use the inadvertently produced documents in that case. The California court reasoned that Plaintiffs' requests to Judge Graham for release of the very same presentence materials remained pending and "the Ohio court is in a better position to interpret and apply its local rules to the documents submitted in a criminal case in that court."

Although Plaintiffs requested access to a broad scope of presentence materials and communications, the Probation Office retained only the PSR, the sentencing recommendation, and the PSR addendum (which included the attached objections). All other documents acquired during the presentence investigation were destroyed in accordance with Probation Office policy. The district court first addressed whether it had authority to entertain Plaintiffs' request for the PSR and related documents under this Court's decision in *In re Siler*, 571 F.3d 604, 609 (6th Cir. 2009), which held that the United States District Court for the Eastern District of Tennessee did not have authority to rule on motions to disclose PSRs. The district court distinguished *In re Siler* because the local rules for the Southern District of Ohio, unlike those for the Eastern District of Tennessee, assign authority over the disclosure of probation records to the sentencing judge in certain circumstances. Concluding that it had authority to resolve Plaintiffs' requests, the district court proceeded to the merits.

The court first found that the First Amendment did not reach PSRs or related documents because other Courts of Appeals decisions have ruled that PSRs do not satisfy the First Amendment's experience and logic test. The court also found that the common law right of access did not apply to the PSR and related documents because they were properly handled and marked as confidential documents, which the common law presumption of access does not reach.

The court went on to explain that PSRs are generally treated as confidential and therefore parties seeking to obtain PSRs must show a "special need" for disclosure. The court applied this "special need" standard, which provides the well-established burden for accessing a PSR, to the objections as well. The court grounded this approach largely on S.D. Ohio Crim. R. 32.1(k), a local rule mandating that "[t]he presentence report and related documents shall be maintained in confidence and under seal." The district court held that the objection letters were "related documents" under Rule 32.1(k)'s scope of protection "because they were integral to the objection process and the preparation of the final PSR." The district court then found that Plaintiffs failed to demonstrate a special need for the documents because their goal of building their case for civil trial was insufficient, especially since Plaintiffs could not show why the information contained in the materials was not available from other sources.

Plaintiffs appeal to this Court, limiting their challenge solely to the district court's nondisclosure of the government's June 14 objections and Scotts's June 18 response to it. Appellant Br. 5 n.1.

## II. JURISDICTION

The district court properly exercised jurisdiction pursuant to 28 U.S.C. § 1331 over Plaintiffs' assertion of a federal common law and First Amendment right of access. We have jurisdiction over Plaintiffs' appeal under 28 U.S.C. § 1291.

## III. STANDARD OF REVIEW

Plaintiffs assert two legal bases for accessing the objections: the common law and the First Amendment. We review a district court's denial of a common law right of access to records for abuse of discretion. *In re Knoxville News-Sentinel Co.*, 723 F.2d 470, 474 (6th Cir. 1983); *see also In re Providence Journal Co.*, 293 F.3d 1, 10 (1st Cir. 2002). A district court abuses its discretion when it relies on an incorrect legal standard, misapplies the correct legal standard, or judges the outcome based on factual findings that are clearly erroneous. *Paterek v. Vill. of Armada, Mich.*, 801 F.3d 630, 643 (6th Cir. 2015). A claim of access under the First Amendment, however, is subject to de novo review. *In re Search of Fair Finance*, 692 F.3d 424, 434 n.4 (6th Cir. 2012); *see also In re Providence Journal*, 293 F.3d at 10.

# IV. ANALYSIS

Plaintiffs assert that the district court erred in two ways. First, they claim the district court incorrectly extended the PSR's presumption of confidentiality to the objections rather than applying a presumption of access under the First Amendment and the common law. Second, they claim that even if the objections do share the PSR's confidential status, Plaintiffs have demonstrated the requisite "special need" to overcome that heightened level of protection. Although not addressed by either party, the district court recognized an additional issue regarding its authority under Sixth Circuit precedent to entertain Plaintiffs' disclosure requests. We address that issue first, followed by Plaintiffs' two claims of error.

## A. Authority to Resolve Requests to Disclose PSRs and Related Documents

Before turning to the merits, we must consider whether our decision in *In re Siler*, 571 F.3d 604 (6th Cir. 2009) affects the analysis in this case. In *In re Siler*, we ruled that the district court did not have authority even *to entertain* motions to release PSRs (much less grant or deny them) because the PSRs were in the custody of the Probation Office, not the court. *Id.* at 609. *In re Siler* thus raises the question of whether the district court in this case had the authority to entertain Plaintiffs' requests for the PSR and related documents. Here, however, the Southern District of Ohio's Local Rule 32 clarifies that the Probation Office's "confidential records and files are the confidential records of the Court." S.D. Ohio Crim. R. 32.2(a). The rule further transfers authority over the disclosure of probation records to the district judge who passed the sentence when the chief district judge refers the disclosure request to the sentencing judge, as occurred in this case. S.D. Ohio Crim. R. 32.2(c). *In re Siler* is therefore distinguishable because the district court in that case did not have an analogous local rule. *See* 571 F.3d at 609–11. In contrast, the Southern District of Ohio's local rules provided a clear basis for the district court here to consider and resolve Plaintiffs' requests for disclosure of the objections.

## B. Legal Standard for Disclosure of PSR Objections

We now turn to the central issue: what legal standard governs a request for disclosure of objections to a PSR. The parties dispute whether the objections carry a presumption of openness pursuant to the First Amendment and common law, or a presumption of confidentiality pursuant

to the standards developed around PSRs.  The outcome of this dispute will determine whether Plaintiffs or Scotts bear the burden of overcoming the presumption.

### 1. Proposed Legal Frameworks

Plaintiffs contend that the objections are akin to sentencing memoranda and therefore should be presumptively accessible under both the First Amendment and the common law.  *See In re Hearst Newspapers, LLC*, 641 F.3d 168, 176 (5th Cir. 2011) (noting that "courts of appeals have also recognized a First Amendment right of access to documents filed for use in sentencing proceedings," including plea agreements and sentencing memoranda); *United States v. Kravetz*, 706 F.3d 47, 57 (1st Cir. 2013) (holding that "sentencing memoranda are judicial documents subject to the common law presumption of public access").  Although the scope of the First Amendment and common law rights differ somewhat, when a right of access arises under either, the burden rests on the party opposing disclosure to show compelling reasons that justify confidentiality.  *See CBS, Inc. v. U.S. Dist. Court for Cent. Dist. of Cal.*, 765 F.2d 823, 825 (9th Cir. 1985) (stating that only "legitimate, compelling interests may be asserted as a ground for closure" where the First Amendment supports a right of access); *In re Knoxville News-Sentinel*, 723 F.2d at 476 (stating that "[o]nly the most compelling reasons can justify non-disclosure of judicial records" accessible under the common law).

Scotts proposes a different legal framework for the requested documents.  Scotts argues that the objections are closely related to the PSR and should be accorded the same confidential treatment as the PSR itself.  Federal courts consistently acknowledge that PSRs occupy a unique position that falls outside the scope of both the First Amendment and the common law rights of access.  *See, e.g., In re Siler*, 571 F.3d at 610 (dictum) ("PSRs are not subject to a common law presumption of court openness."); *United States v. Huckaby*, 43 F.3d 135, 138 (5th Cir. 1995) ("There is a 'general presumption that courts will not grant third parties access to the presentence reports of other individuals.'" (quoting *United States v. Smith*, 13 F.3d 860, 867 (5th Cir. 1994)); *United States v. Corbitt*, 879 F.2d 224, 237 (7th Cir. 1989) ("[T]here is no first amendment right of access to presentence reports."); *United States v. Schlette*, 842 F.2d 1574, 1579 (9th Cir. 1988) ("[A] strong presumption in favor of confidentiality [of PSRs] has been established by the courts.").  The commonly invoked reasons underlying PSRs' special status are threefold: (1) the

defendant's interest in privacy and in preventing the dissemination of inaccurate information, (2) law enforcement's and cooperating informants' interest in confidentiality, and (3) the sentencing court's interest in encouraging the free flow of information during the presentencing process. *See, e.g.*, *Huckaby*, 43 F.3d at 138; *Corbitt*, 879 F.2d at 229–35. Because of these policy reasons for maintaining the confidentiality of PSRs, a third party seeking release of a PSR must make a showing of "special need" to obtain the document. *See, e.g.*, *U.S. Dep't of Justice v. Julian*, 486 U.S. 1, 12 (1988).

### 2. Parallels Between the PSR and the Objections Merit a Similar Level of Protection

Although the district court relied principally on S.D. Ohio Crim. R. 32.1(k) to extend the PSR's presumption of confidentiality to the objections, other sources of law counsel this approach as well, including the text and history of Federal Rule of Criminal Procedure 32, case law establishing confidentiality for PSRs and related documents, and the First Amendment and common law rights of access themselves. These sources demonstrate that the objections Plaintiffs seek are fundamentally interconnected with the PSR in three ways: procedure, purpose, and policy considerations. These connections justify treating a request for objections under the same legal standards that control a request for a PSR.[2]

---

[2]The dissent suggests that we need not decide whether presentence objections as a general matter fall under the same legal standard as a PSR. Rather, the dissent proposes a case-by-case approach whereby we examine only the specific presentence objections at issue to determine: (1) whether those *particular* documents implicate the policy considerations underlying PSRs' confidentiality, and (2) whether they are similar to documents protected by the First Amendment. Dissenting Op. at 1. There are several problems with this proposed approach. First, the proposed test obscures where the burden of proof lies for accessing a judicial document. Does the party requesting the documents have the burden of demonstrating a negative answer to the dissent's first question and an affirmative answer to the second? Or does the party opposing disclosure have the burden of demonstrating the opposite? This critical question of the burden of proof requires that we first establish whether the type of document at issue carries a presumption of openness, which places the burden of proof on the party opposing disclosure, or a presumption of confidentiality, which places the burden of proof on the party requesting disclosure. Second, the proposed test lacks any basis in our or other Circuits' precedent. In fact, the dissent's approach reverses the analysis set by our precedent for First Amendment access claims. Both the First Amendment "experience and logic" test and the PSR's standard of confidentiality begin with a general standard (of openness or confidentiality) for certain types of proceedings and documents, but then recognize an exception in specific circumstances. In contrast, the dissent proposes that we examine only the specific documents at issue without attempting to categorize them under a general rule. This proposal appears to follow from a faulty assumption that categorizing presentence objections as presumptively confidential means a court cannot consider whether the specific objections actually implicate the general confidentiality concerns. But presumptively confidential PSRs and objections may still be accessed if the party seeking disclosure makes a showing of "special need," *see Julian*, 486 U.S. at 12, and the "special need"

First, objections are prepared as part of the confidential process of creating the PSR. *Cf. United States v. Preate*, 927 F. Supp. 163, 166 (M.D. Pa. 1996) (holding that the transcript of an in-chambers conference held to discuss objections to the PSR was covered by the PSR's presumption of confidentiality because the conference did not arise "independently from" the PSR but arose "for the very purpose of discussing the presentence report"); *Hancock Bros., Inc. v. Jones*, 293 F. Supp. 1229, 1232–33 (N.D. Cal. 1968) (denying disclosure of a presentencing memorandum prepared by a division of the DOJ because it was prepared at the request of the Probation Office for the purpose of inclusion in the PSR). Indeed, in this case the objections arose precisely in accordance with the process outlined by Federal Rule of Criminal Procedure 32, which governs presentence investigations and reports. Just as courts have read Rule 32 to endorse the practice of keeping PSRs confidential, *see United States v. Pena*, 227 F.3d 23, 26 (2d Cir. 2000); *Huckaby*, 43 F.3d at 137, Rule 32 similarly affords the objection process and its attendant documents "statute-based confidentiality protection," *Pena*, 227 F.3d at 27. Rule 32 provides a specific procedure for objecting to the PSR whereby the "objecting party must provide a copy of its objections to the opposing party and to the probation officer"—but, significantly, not to the court. Fed. R. Crim. P. 32(f)(2). Although in this case Officer Boucher chose to include the parties' original written objections in the addendum to the court, nothing (absent a court order) requires objections to the PSR to be filed with the court at all. Thus, it is difficult to analogize the objections to sentencing memoranda as Plaintiffs urge us to do. Objections fit much more comfortably in the category of presentencing information furnished to the Probation Office with an expectation of confidentiality, much like the information contained in the PSR itself.

Rule 32 does, however, require the probation officer to "submit to the court and to the parties the presentence report and an addendum containing any unresolved objections, the grounds for those objections, and the probation officer's comments on them." Fed. R. Crim. P. 32(g). In turn, the court must verify at sentencing that the defendant and defendant's attorney

---

standard incorporates a consideration of whether the policy reasons underpinning confidentiality apply in the particular case, *see, e.g.*, *Iqbal*, 684 F.3d at 511–12; *Huckaby*, 43 F.3d at 139. The dissent turns this analysis on its head by prioritizing the content of the particular documents over the preliminary question of whether the document is generally accessible or generally confidential. The dissent's approach decreases predictability and undermines one of the purposes of confidentiality: encouraging people to share information by giving assurance that it will not one day be broadcast to the public.

have read and discussed the PSR and any addendum, which, as mentioned, must include the parties' unresolved objections. Fed. R. Crim. P. 32(i)(1)(A). While these provisions contemplate limited disclosure of objections to the court, they reflect a close relationship between parties' unresolved objections and the PSR itself. The unresolved objections must be included the addendum, which Rule 32 presents as an integral part of the PSR by requiring the court to confirm that the defendant has reviewed both documents with the defense attorney. Officer Boucher complied with this rule by summarizing the parties' objections in the supplemental addendum and submitting it to the court. By creating a connection between the parties' objections and the PSR addendum, not only in this case but in any case involving unresolved objections, Rule 32 justifies an inference that the PSR's confidential status extends to objections.

Second, objections serve a similar purpose to the PSR itself: to aid the court in sentencing. "The principal function of the presentence report is to assist the court in determining the appropriate sentence." *United States v. Charmer Indus., Inc.*, 711 F.2d 1164, 1170 (2d Cir. 1983). Similarly, the purpose of allowing parties to object to the PSR is to ensure the accuracy of sentencing information, both out of fairness to the defendant and in furtherance of the judicial system's goal of imposing just sentences. *See* Fed. R. Crim. P. 32 advisory committee's note, 1974 amendments, subd. (c)(3)(A) ("[A]ccuracy of sentencing information is important not only to the defendant but also to effective correctional treatment of a convicted offender. The best way of insuring accuracy is disclosure with an opportunity for the defendant and counsel to point out . . . information thought by the defense to be inaccurate, incomplete, or otherwise misleading."). Although objections like those at issue here are not written by the Probation Office, the objections are "filtered by" the Probation Office in the sense that it must review and may attempt to resolve the objections before submitting them to the court as directed by Rule 32. *United States v. Gotti*, 322 F. Supp. 2d 230, 249 (E.D.N.Y. 2004); Fed. R. Crim. P. 32(f)(3), (g). The function of the objection process therefore differs significantly from the function of sentencing memoranda and extrinsic evidence presented in open court. *See United States v. Santarelli*, 729 F.2d 1388, 1390–91 (11th Cir. 1984) (distinguishing between an *in camera* proceeding held to allow the defendant to present objections to the PSR and an open sentencing hearing where the government submits extrinsic evidence material to sentencing). The objection

process serves to "examine the soundness and sufficiency of the presentence report prior to sentencing," whereas the traditionally public sentencing hearing constitutes an adversary proceeding where the parties advocate for a particular sentencing outcome and the court announces the sentence. *Preate*, 927 F. Supp. at 166. This similarity of purpose between the PSR and the objection process weighs in favor of subjecting objections to the same standard of confidentiality as the PSR itself.

Largely as a result of this similarity of process and purpose, many of the same policy concerns that underlie PSRs' presumptive confidentiality apply to objections. As mentioned, those concerns include privacy, confidentiality, and open communication during the presentence investigation. One of the reasons courts have held that the defendant has a strong privacy interest in the PSR is because of PSRs' tendency to contain misinformation. PSRs do not conform to the rules of evidence and may contain hearsay or other unreliable evidence. Contested facts frequently remain in the report even if the court chooses to disregard them for sentencing or expressly finds them inaccurate. *See United States v. Iqbal*, 684 F.3d 507, 510 (5th Cir. 2012); *Corbitt*, 879 F.2d at 231; *Huckaby*, 43 F.3d at 138; *Charmer*, 711 F.2d at 1175. An additional reason for nondisclosure is that PSRs often contain information gleaned from confidential informants. *Corbitt*, 879 F.2d at 235; *Huckaby*, 43 F.3d at 138. Public disclosure of these sources can endanger government informants and "may obstruct the government's ability to investigate crimes." *Corbitt*, 879 F.2d at 235. Lastly, the sentencing judge has a substantial interest in obtaining a wide range of information relevant to the sentencing decision. Disclosure of PSRs would tend to restrict the sentencing court's access to relevant knowledge by discouraging the transmission of information by defendants and cooperating third parties. *Julian*, 486 U.S. at 12; *Corbitt*, 879 F.2d at 232–33; *Huckaby*, 43 F.3d at 138.

Objections implicate these same policy considerations. Objections to the PSR necessarily refer to the content of the PSR itself and tend to focus on the most controversial pieces of information, information that may be supported only by hearsay or other unreliable evidence. Moreover, because Fed. R. Crim. P. 32(i)(3)(B) allows the court to bypass objections to the PSR by not considering the contested facts in sentencing, it is likely that objections will contain inaccurate or at least disputed information not resolved by a court. Objections therefore entail

the same concerns about misinformation that courts have cited in denying the release of PSRs. Additionally, although not an issue in this case, it is not difficult to imagine a scenario where objections discuss or refer to an informant who provided information contained in the PSR. Disclosure of objection letters could thus, in some circumstances, threaten government informants and undermine criminal investigations. Finally, objections represent a key stage in the Probation Office's process of collecting information and developing the PSR. This informational role implicates the judiciary's interest in forthright communication during the presentence investigation, the same interest that courts have recognized supports nondisclosure of PSRs. Routine disclosure of objections could very well stifle parties' willingness to object to the contents of the PSR at all. The Probation Office for the Southern District of Ohio confirmed this understanding in a memorandum to the district court in this case, where it asserted that "maintaining the confidentiality of the presentence report and investigative information, including the resolution of any objections during the presentence process, is essential to the ongoing free flow of information." Because the same rationales that weigh against releasing the PSR also apply to objections, it stands to reason that objections should garner the same level of confidentiality protection that PSRs receive. *Cf. United States v. Lawrence*, 167 F. Supp. 2d 504, 508 (N.D.N.Y. 2001) (treating letters submitted to the sentencing court by third parties as confidential because "the rationales for keeping presentence reports confidential are equally applicable here").

We conclude that the close relationship between the PSR and objections, their basic similarities in function, and the similar negative ramifications of disclosing them warrant extending the PSR's presumption of confidentiality to the objections.

### 3. *Treating the Objections as Confidential Does Not Violate the First Amendment or the Common Law*

Plaintiffs argue that granting the objections the same level of confidential treatment as the PSR contravenes the First Amendment[3] and the common law rights of access. An examination

---

[3]Scotts argues that Plaintiffs waived their First Amendment argument by not adequately developing it before the district court. We disagree. Issues may be waived "when they are raised for the first time in motions requesting reconsideration or in replies to responses," *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008), or where a party made only vague, brief references to them before the district court, *see Berera v. Mesa Med.*

of the parameters of these rights, however, only confirms our conclusion that the objections should be afforded the same confidential treatment as the PSR.

A First Amendment right of access arises only where: (1) the proceeding or document to which access is sought has historically been open to the press and general public, and (2) public access plays a significant positive role in the functioning of the particular process in question. *Fair Finance*, 692 F.3d at 429 (citing *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 8 (1986) (*Press-Enterprise II*)). The objections fail both prongs of this test.

Objections have not been historically available to the public. In fact, before 1975, most courts did not permit the defendant to access his own PSR, much less comment on or object to it. *United States v. Trevino*, 89 F.3d 187, 190 (4th Cir. 1996). By 1975, Rule 32 required disclosure of the PSR to the defendant only upon request. *Julian*, 486 U.S. at 9. Not until 1983 was disclosure to the defendant automatic. *Id.* at 9–10. Thus, the very existence of objections to the PSR would not have been widespread until at least 1975 and, more likely, not until 1983. Plaintiffs have not pointed to any cases or secondary sources recording a historical practice, or even a single example, of open access to objections. Although references to the accessibility of objections in the case law are scarce, at least one court acknowledged that its step of "filing the presentence report, *together with [the defendant's] objections*, into the record" was "unusual." *Huckaby*, 43 F.3d at 137 (emphasis added). This backdrop reveals that objections—in their relatively short history—have not been broadly or readily available to the public.

As for the "logic" prong, our analysis of the rationales supporting confidentiality for PSRs and objections underscores why public access to objections would not play a "significant positive role" in the PSR objection process. Rather, public access would pose a disincentive to raising objections, which would, in turn, undermine the goal of gathering accurate and complete

---

*Grp.*, 779 F.3d 352, 361 (6th Cir. 2015). Neither type of waiver occurred here. Although Plaintiffs did not invoke the First Amendment in their initial letters to Judge Graham, they raised the argument in their response to Scotts's motion to seal, giving Scotts an opportunity to counter in its reply, which Scotts did. Moreover, while Plaintiffs' First Amendment argument may not have cited the most specific or on-point authority, it explicitly referred to a First Amendment right of access and identified cases that recognized the right applied to sentencing proceedings generally. Plaintiffs' argument was not so vague as to fail to apprise the district court or Scotts of the basis of the argument. Lastly, Plaintiffs' failure to invoke the "experience and logic" test does not prevent this panel from applying the correct law to Plaintiffs' First Amendment claim. *See Kamen Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991).

information to aid the sentencing court. Therefore, treating the objections as confidential does not violate the First Amendment.

A common law right of access generally applies to all public records and documents, including judicial records and documents. *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). But the common law presumption in favor of public access does not reach materials properly submitted to the court under seal or otherwise kept confidential for important policy reasons. *Corbitt*, 879 F.2d at 228; *Times Mirror Co. v. United States*, 873 F.2d 1210, 1219 (9th Cir. 1989). For this reason, we observed in *In re Siler* that the common law presumption of access did not cover the requested PSRs because "PSRs are not treated as public records within the judicial system, but are handled and marked as 'confidential reports.'" 571 F.3d at 610 (dictum). The objections here were similarly not treated as public by the parties, the Probation Office, or the court. They were not filed on the court's public docket but rather delivered to the Probation Office, as directed by Rule 32. The Southern District of Ohio's local rules, too, maintained the letters as confidential. *See* S.D. Ohio Crim. R. 32.1(c) (requiring parties to communicate objections to the Probation Officer and not the court), (k) (providing that the PSR and "related documents" shall be maintained in confidence).

Plaintiffs argue that the Southern District of Ohio's local rules cannot override substantive rights such as the common law right of access, citing as support 28 U.S.C. § 2072(b): "Such rules shall not abridge, enlarge or modify any substantive right." This statute, however, refers to rules prescribed by the Supreme Court—not local rules promulgated by federal district courts. Local rules must simply be "consistent with Acts of Congress and rules of practice and procedure" prescribed by the Supreme Court under § 2072, rules such as the Federal Rules of Criminal Procedure. 28 U.S.C. § 2071(a). Plaintiffs' argument, therefore, rests on a mistaken construction of § 2072(b). In any event, the Southern District of Ohio's local rules do not run afoul of the statutes that Plaintiffs cite. First, S.D. Ohio Crim. R. 32.1(k)'s provision of confidentiality for documents "related" to the PSR does not conflict with the Federal Rules of Criminal Procedure or any federal statute. As explained above, Rule 32 actually supports the Southern District of Ohio's practice of keeping objections confidential. Second, Plaintiffs have not argued or presented any case holding that Rule 32 itself abridges substantive rights in

violation of § 2072(b). These statutes thus pose no obstacle to treating the objections as presumptively confidential.

More importantly, the Southern District of Ohio's confidential treatment of the objection letters was proper, as we have already explained that important policy reasons, such as privacy, protection of confidential sources, and facilitation of open communication, undergird nondisclosure of these documents. *See Times Mirror Co.*, 873 F.2d at 1219 ("[T]here is no right of access to documents which have traditionally been kept secret for important policy reasons."). Therefore, granting the objections a presumption of confidentiality does not violate the common law right of access.

Because we hold that the objections merit the same presumption of confidentiality as the PSR itself and that such an approach contravenes neither the First Amendment nor the common law, Plaintiffs are not entitled to access the documents unless they can show a special need.

**C.  Application of Special Need Standard to Plaintiffs**

We review a district court's decision whether to release a PSR for abuse of discretion. *See In re Siler*, 571 F.3d at 611 (dictum); *see also United States v. Spotted Elk*, 548 F.3d 641, 672 (8th Cir. 2008). Having concluded that objections fall under the same legal category as a PSR, we will review the district court's decision whether to disclose the objections for abuse of discretion.

A third party seeking access to a document protected by the PSR's presumption of confidentiality must make "some showing of special need" before the court may release the document. *Julian*, 486 U.S. at 12. PSRs and similar documents should not be disclosed merely to save civil plaintiffs time and expense in preparing their lawsuits. *See Schlette*, 842 F.2d at 1584; *Beller ex rel. Beller v. United States*, 221 F.R.D. 674, 678 (D.N.M. 2003); *Hancock Bros.*, 293 F. Supp. at 1233. Mere convenience or relevance will not suffice. *See Beller*, 221 F.R.D. at 679; *Hancock Bros.*, 293 F. Supp. at 1233. Moreover, the party seeking disclosure must demonstrate that the information sought is not available from other sources. *See, e.g., In re Siler*, 571 F.3d at 611 (dictum); *Spotted Elk*, 548 F.3d at 672; *Charmer*, 711 F.2d at 1177.

Plaintiffs point to three sentences from the objections that they seek to use in their class action against Scotts.  The first two sentences, both from the government's objections, describe the government's belief that Scotts's pesticide-treated bird food caused actual harm to birds and presented a significant risk of harm.  The third sentence comes from Scotts's response to the government's objections, where Scotts acknowledged, but disagreed with, the government's opinion that the bird food presented a risk of harm to birds.

According to Plaintiffs, these three sentences are critical to their theory of class certification in the California action, as well as to the underlying merits of their claims.  Part of Plaintiffs' theory of class certification is that, had Scotts revealed its illegal application of pesticides to its bird food, consumers would not have purchased the product.  Scotts countered this theory by presenting expert testimony that the pesticide-treated bird food did not pose a significant risk of harm to birds and therefore many consumers would have purchased the bird food even had Scotts disclosed the pesticide use.  Plaintiffs assert that the objections will refute Scotts's representations in the California action, made via expert testimony, that its bird seed was not toxic and did not pose a significant risk of harm.  Plaintiffs further claim that the government's belief about the harmfulness of the bird seed is independently significant in showing that a reasonable consumer would not have purchased the bird seed had he or she known of the pesticide application.

We agree with the district court that Plaintiffs have not met their burden of establishing a special need for the information sought in the objections.  As the district court held, Plaintiffs have not demonstrated that the desired information is unavailable from other sources.  In fact, the key statements from the objections contain little beyond what is publicly available in the sentencing hearing transcript.  During the sentencing hearing, the sentencing judge stated in open court that "the government and Scotts disagree over whether or not there was any actual damage to birds or wildlife.  The government believes that there was some harm, and it is clear that there were some reports by citizens of bird deaths."  The court went on to find that "there was good reason to prohibit the use of these pesticides in material that would be eaten by birds, and certainly, at some level these pesticides are toxic to wildlife."  Although the court declined to rule on the issue of actual harm, it concluded that "there was certainly a threat of harm."  This

publicly available document thus establishes what Plaintiffs claim is so important to their case: the government's belief that Scotts's bird food caused actual harm, and the existence of a risk of harm. Although the sentencing court's summary of the government's belief may not be as detailed as the government's own expression of its opinion in its objections, Plaintiffs have not shown that this publicly available record is "inadequate for [their] purposes." *Spotted Elk*, 548 F.3d at 672; *see also Charmer*, 711 F.2d at 1177 (finding no special need where "nearly all of the pertinent information" in the PSR also appeared in the government's publicly available plea memorandum).

The information Plaintiffs seek is also available from multiple other sources in addition to the sentencing transcript. Plaintiffs may retain their own experts to comment on the toxicity of the bird seed, depose Scotts's experts and employees on this subject, or acquire the underlying documents that the government and Scotts relied upon to reach the conclusions contained in their objections. As the district court observed, records created by the EPA, DOJ, or Scotts would not become PSR-related documents entitled to confidentiality merely because they were the source for information provided to the Probation Office. *See Santarelli*, 729 F.2d at 1390 ("[I]nclusion in the presentence report . . . of information known to the Government which is material to sentencing does not *ipso facto* confer a status of secrecy or privilege upon the information which did not previously exist."). Plaintiffs, thus, could seek directly from the EPA any records that contain analysis of Scotts's pesticide-treated bird food.

Despite these apparent alternative sources, Plaintiffs' attorney strenuously contested the availability of the desired information during oral argument. According to Plaintiffs, the government did not memorialize its opinion regarding the harm posed by Scotts's bird food anywhere other than its objections. This assertion fails to establish the requisite special need for two reasons. First, Plaintiffs did not introduce any evidence that they tried and failed to obtain the government's analysis or opinion through usual discovery methods. As the party requesting the protected documents, Plaintiffs bear the burden of demonstrating a special need; an unsubstantiated statement that the government's opinion exists in no other document does not satisfy that standard. Second, if the government truly does not possess any written data, studies, or analysis of Scotts's bird food (or the pesticides applied to it) independent of the opinion stated

in its objections, the reliability of that opinion is necessarily suspect. The presence of such unsupported and unreliable statements is one of the chief reasons we refrain from disclosing PSRs and objections in the first place.

There are additional reasons to deny disclosure in this case. Even if Plaintiffs had made an initial showing of special need, courts often weigh that need against the extent to which the policy reasons underpinning confidentiality apply in the particular case. *See, e.g., Iqbal*, 684 F.3d at 511–12; *Huckaby*, 43 F.3d at 139. That being said, courts should "be sensitive not only to the interests in confidentiality of the particular report, but also to the possible future effects of disclosure in any particular case." *Corbitt*, 879 F.2d at 239. In addition to Plaintiffs not making the threshold showing of special need, the district court correctly noted that several of the general policy justifications for non-disclosure applied in this particular case, specifically the privacy and open communication concerns. The court also noted that disclosure could produce negative consequences for open communication in future cases.

As for the privacy consideration, the statements Plaintiffs seek to use against Scotts in the California class action are largely hearsay, triggering our concern about misinformation in the objections being disseminated and used for an unintended purpose. The district court never ruled on the parties' objections regarding actual harm, yet the parties' comments on that issue were not removed from either the PSR or the objections. This scenario exactly reflects the concerns about inaccurate information that support our general rule of non-disclosure. Plaintiffs' attorney protested at oral argument that hearsay is not a legitimate concern in this case because the objections would not be introduced for their truth, but rather would be used to show the effect on reasonable consumers' purchasing decisions had they known the government believed the bird food to be unsafe. But to accept this argument, we would have to overlook what Plaintiffs have actually argued in the California action. Plaintiffs' causation theory for class certification rests on the premise that a reasonable consumer would not have purchased Scotts's bird food had they known of the toxic pesticide application—*not* that they would not have purchased the bird food had they known of the government's opinion (right or wrong) as to the risk of harm. Scotts countered that causation theory by arguing that a reasonable consumer would still buy the product because the pesticides, in truth, did not pose a risk of harm. This counterargument

spurred Plaintiffs to controvert Scotts's expert evidence of an insignificant risk of harm by presenting evidence of the government's contrary opinion. In actuality, then, Plaintiffs seek to use the government's opinion for its truth, specifically to bolster their claim that no reasonable consumer would have purchased the bird food because it, *in truth*, posed a serious risk of harm to birds. Therefore, the presence of unreliable hearsay remains a justification for denying disclosure in this case.

On the open communication issue, the district court emphasized the unique need for encouraging the parties to furnish complete information in this case because the plea agreement included a binding sentencing agreement under Rule 11(c)(1)(C). If a court accepts a Rule 11(c)(1)C) plea agreement, it is bound to the stipulated sentence and may not modify the parties' agreement; if the court rejects the plea agreement, it must afford the defendant an opportunity to withdraw the guilty plea. *See* Fed. R. Crim. P. 11(c)(3)(A); *United States v. Kemper*, 908 F.2d 33, 36–37 (6th Cir. 1990). As the district court observed at the sentencing hearing, it was required to determine whether the sentence reached by the parties was sufficient but not greater than necessary to satisfy the sentencing factors outlined in 18 U.S.C. § 3553(a). When a Rule 11(c)(1)(C) agreement is involved, a defendant arguably has even less incentive than usual to provide the court information relevant to sentencing, as he or she has already reached a mutually beneficial sentence with the government and the worst potential consequence of the court rejecting the agreement is withdrawal of the guilty plea. Thus, the district court reasoned, "it was critical during the PSR process to encourage Scotts to provide information to the court relevant to sentencing." Releasing objections in such a case can reasonably be expected to plant doubt in defendants' minds whether the information they share during the presentence investigation will be shielded from public view. We agree with the district court that "[i]f a precedent of disclosure . . . is established in this case, it might discourage corporations from volunteering information in confidence in the future, and could also affect the government's ability to negotiate plea agreements in similar cases." This concern lent strong support to the district court's denial of Plaintiffs' disclosure requests.

Because Plaintiffs have not demonstrated that the information they seek is not available from other sources and because legitimate policy concerns weigh against disclosure, the district court did not abuse its discretion in denying the release of the objections.

## V. CONCLUSION

For these reasons, we AFFIRM the district court's judgment.

---

**DISSENT**

---

BERNICE BOUIE DONALD, Circuit Judge, dissenting. The majority answered the wrong question. The case-dispositive inquiry is not whether PSR objection letters are generally exempt from disclosure under the first amendment or the common law. Instead, we should review the specific objection letters at issue here for their content and ask two threshold questions. First, could we grant access to these particular letters without implicating the reasons we keep PSRs private? Second, are the letters really more like a document to which the first amendment attaches? *See, e.g., In re Hearst Newspapers*, 641 F.3d 168, 176 (5th Cir. 2011). Because the answer to both questions is yes, I respectfully dissent.

As a general rule, the public has a first amendment right of access to court documents and proceedings. *See, e.g., Press Enter. Co. v. Superior Court of California*, 464 U.S. 501, 505-508 (1984); *Globe Newspaper Co. v. Superior Court for Norfolk Cnty.*, 457 U.S. 596, 604-605 (1982); *United States v. Alcantara*, 396 F.3d 189, 196 (2d Cir. 2005). There are only narrow exceptions, one of which is for PSRs. *Huckaby*, 43 F.3d at 138. To ensure that public access to court documents and proceedings remains the rule, courts should carefully scrutinize attempts to invoke exceptions, and not simply defer to the labels used in a particular case.

With that in mind, I turn my attention to the specific objection letters in this case. As the majority notes, the plaintiffs want to use three sentences from the objection letters. (slip op. 19). Two of those sentences describe the government's view that Scotts' bird food caused actual bird deaths. *Id.* The other sentence is one where Scotts acknowledges the government's view, but argues that its bird food caused no deaths. *Id.*

None of this implicates the three policy considerations the majority cited for exempting PSRs from disclosure. The first is a desire to protect the defendant's privacy interest in sensitive personal information. *Huckaby*, 43 F.3d at 138 (As the fifth circuit explained, a PSR "routinely describes the defendant's health, family ties, education, financial status, mental and emotional condition, prior criminal history and uncharged crimes."). The majority does not argue that the

letters contain such information.  The closest it comes to arguing that withholding the letters would protect privacy is when it asserts that the information included in the letters is hearsay. (slip op. 23).  But the mere fact that the information would be hearsay—if true—is not enough to show that releasing it would hinder privacy.

The second reason courts exempt PSRs is to avoid impeding the free flow of information to the probation office.  If a PSR might one day become public, the logic goes, then people might be less willing to contribute relevant information.  *Huckaby*, 43 F.3d at 138.  The question we should ask to determine if this is a legitimate worry here is whether the government or Scotts would have been deterred from sharing the information included in their objection letters if they knew it could eventually be public.  *See Corbitt*, 879 F.2d at 233.  The majority nowhere suggests that this is the case.  Indeed, knowing that the letters might one day be disclosed would arguably have made Scotts more likely to write an objection letter.  If the letter became public, it could show that it had steadfastly maintained that its products had done no harm during the criminal proceedings.

Third, courts exempt PSRs to protect confidential informants and information.  *Id.*  The majority admits this is not a concern with respect to these specific objection letters.  (slip op. 15).

Of course, just because these letters do not implicate the policy rationales for refusing to attach the first amendment to PSRs, it does not necessarily follow that the first amendment would attach to these letters.  I therefore consider whether these letters are actually more like sentencing memoranda, which the majority implicitly concedes, *are* covered by the first amendment.  (slip op. 9).  A quintessential function of a sentencing memorandum is to set forth a party's view of how much harm criminal conduct caused in hopes of convincing a court to impose a more or less lenient sentence.  Take Leonard Moore's publicly available sentencing memorandum in a case the sixth circuit ultimately considered.  Just as Scotts argued that the government wrongly attributed bird deaths to its product, Moore argued that the government wrongly attributed the theft of all motorcycles stolen during "Bike Week" to his criminal activity in the PSR.  Both no doubt wanted a sentence that reflected their view of how much harm the conduct in question actually caused.

Importantly, the first amendment applies to sentencing proceedings and related documents because "openness in the sentencing context allows the public to observe whether the defendant is being justly sentenced, especially where the court, rather than a jury, is determining the sentence." *In re Hearst Newspapers*, 641 F.3d at 179.  That is especially true here for two reasons.  First, the question of whether Scotts' products caused bird deaths bears directly on the sentence's fairness, i.e., whether the punishment fit the crime. *See id.*  Additionally, this case has broad public interest because of the impact of the defendants' conduct on the environment.  Second, because this case involved a plea bargain and did not involve factual development at trial, the objection letters are the only way the public can assess the government's and Scotts' evidence.  I would note parenthetically that at least 90% of cases today are resolved through a plea bargain.  Lindsey Devers, *Plea and Charge Bargaining: Research Summary*, (Jan. 24, 2011), https://www.bja.gov/Publications/Plea BargainingResearchSummary.pdf.  That means categorically withholding PSR objection letters, even when they readily resemble sentencing memoranda, could prevent the public from scrutinizing the fairness of a sentence in the overwhelming majority of cases.

Today's ruling sets a troubling precedent.  What savvy corporation seeking to avoid publicity of its criminal misdeeds will not channel all of its sentencing advocacy into the PSR process after reading this decision?  The only way to prevent such defendants from nullifying the first amendment in the sentencing context is to look beyond the labels those defendants attach to their advocacy and consider whether the substance of what they submit really implicates the reasons we keep PSRs private, and whether it is more akin to the sort of documents the first amendment protects.  Because the majority neglected this critical analysis, I must respectfully dissent.