*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 12a0304p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

In re: IN THE MATTER OF THE SEARCH OF
FAIR FINANCE, FAIR FINANCIAL, OBSIDIAN
ENTERPRISES, AND TIMOTHY S. DURHAM.

_____

AKRON BEACON JOURNAL; INDIANAPOLIS
BUSINESS JOURNAL,

                              *Movants-Appellants*,

INDIANAPOLIS STAR; WALL STREET JOURNAL,
                              *Movants,*

          *v.*

UNITED STATES OF AMERICA,
                    *Interested Party-Appellee*.

> No. 10-4139

Appeal from the United States District Court
for the Northern District of Ohio at Akron.
No. 5:09-mc-117—Sara E. Lioi, District Judge.

Argued: February 29, 2012

Decided and Filed: September 5, 2012

Before: COOK, McKEAGUE, and ROTH, Circuit Judges.[*]

_____

## COUNSEL

**ARGUED:** Karen C. Lefton, BROUSE McDOWELL, L.P.A., Akron, Ohio, for Appellants. Winfield D. Ong, UNITED STATES ATTORNEY'S OFFICE, Indianapolis, Indiana, for Appellee. **ON BRIEF:** Karen C. Lefton, Kerri l. Keller, Caroline L. Marks, BROUSE McDOWELL, L.P.A., Akron, Ohio, for Appellants. Winfield D. Ong, UNITED STATES ATTORNEY'S OFFICE, Indianapolis, Indiana, Elizabeth D. Collery, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

_____

[*] The Honorable Jane R. Roth, United States Circuit Judge for the United States Court of Appeals for the Third Circuit, sitting by designation.

---

**OPINION**

---

JANE ROTH, Circuit Judge.   This appeal arises from an attempt by two newspapers to obtain sealed court documents filed in proceedings for the issuance of a search warrant.   The newspapers contend that they have a right of access to these documents under the First Amendment and that the district court erred in denying their motion to unseal them.   As we explain below, we find that the First Amendment right of access does not permit the newspapers to obtain the documents filed in connection with these search warrant proceedings.   We accordingly affirm the district court's order.

## I.       BACKGROUND

On November 23, 2009, federal law enforcement officers applied for a warrant to search the offices of Fair Finance Company in Akron, Ohio.   The warrant was sought as part of an investigation into a potential financial fraud being committed by the company's owner, Timothy S. Durham, who was suspected of employing the company to engage in a classic Ponzi scheme.   Durham had allegedly been using money that was received by Fair Finance from new investors to pay the existing investors, collecting a profit for himself in the process.   A United States Magistrate Judge in the Northern District of Ohio granted authorization to conduct the search, opening a new magistrate judge file in the matter and, at the government's request, sealing the file until further order.   As a result, the search warrant application, the affidavit filed in support of that application, the warrant itself, the government's motion seeking sealing, the order granting that motion, and the docket sheet for the file were all sealed.

On November 24, 2009, officers executed the search.   When the warrant and an inventory of seized items were subsequently returned to the court, those documents were placed in the sealed file.

On December 17, 2009, as part of their efforts to obtain information on Durham's alleged scheme, two newspapers, the Akron Beacon Journal and the Indianapolis Star,

filed a motion in the U.S. District Court for the Northern District of Ohio, requesting an "Order unsealing Affidavits, Search Warrants and any other documents . . . executed under seal pertaining to the search of Fair Finance."[1]   On January 4, 2010, the newspapers filed an amended version of this motion, in which the Wall Street Journal and Indianapolis Business Journal joined.  The newspapers argued in support of their motion that they had a right of access to the sealed search warrant documents under both the common law and the First Amendment.  The government opposed the motion.  On August 10, 2010, the district court issued an order denying the newspapers' motion to unseal.  On September 9, 2010, the Akron Beacon Journal and the Indianapolis Star appealed.

After an indictment was issued, the government on March 28, 2011, moved to unseal (1) the face sheet of the search warrant, (2) the form application for the search warrant (excluding the affidavit filed in support of the application), and (3) the inventory returned on the search warrant.  The district court granted the motion.  On April 6, 2012, again on the government's motion, the district court unsealed (1) two attachments to the search warrant and search warrant application, (2) the government's motion to seal the search warrant and related documents, and (3) the order granting that motion.  Both the affidavit filed in support of the search warrant application and the docket sheet remained sealed.  At oral argument before this Court, however, the newspapers stated that they no longer are contesting the sealing of the affidavit.

## II.  JURISDICTION

Even though the unsealing of documents rendered the newspapers' motion moot, we do not lose jurisdiction of this appeal.  While it is true that under mootness doctrine, a federal court has no authority "to declare rules of law that cannot affect the matter at issue," *Cleveland Branch, NAACP v. City of Parma*, 263 F.3d 513, 530 (6th Cir. 2001), that principle does not apply where a dispute "is capable of repetition, yet evading

---

[1]Durham also owns Obsidian Enterprises, Inc.  Federal officers searched the Indianapolis, Indiana, office of that company as well.  The newspapers filed a motion in the Southern District of Indiana to unseal the documents related to the warrant for that search but subsequently abandoned that effort.

review." *S. Pac. Terminal Co. v. ICC*, 219 U.S. 498, 515 (1911). This exception to mootness enables federal courts to keep jurisdiction where (1) the challenged action is too short in duration to be fully litigated prior to its expiration, and (2) there is a reasonable expectation that the same complaining party will be subjected to the same action in the future. *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975). The proceedings involved with orders to seal of the type at issue here are often too short to be fully litigated. Moreover, it is reasonable to expect that the newspapers may be denied access to search warrant documents in future attempts to report on matters related to criminal investigations. Thus, we conclude that we have jurisdiction to consider the First Amendment right of access to the documents sealed here and that our jurisdiction is proper under 28 U.S.C. § 1291.

## III.   DISCUSSION

The newspapers contend on appeal that the First Amendment guarantees a right to access documents filed in search warrant proceedings and that the district court's denial of their motion to unseal such documents was in error. They maintain that this right also encompasses access to the docket sheet, and that the district court was required to grant them access to that document. They additionally argue that the district court failed to adequately articulate its decision denying their motion to unseal and that it erred in sealing the documents indefinitely. We address each contention below.

### A.       First Amendment Right of Access to Search Warrant Documents

Under the First Amendment, the public and the press enjoy a right of access to criminal trials. *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980). As the Supreme Court noted in *Richmond Newspapers*, the First Amendment right of access to criminal proceedings is grounded generally in a "purpose of assuring freedom of communication on matters relating to the functioning of government." 448 U.S. at 575; *see also Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 604 (1982) ("Underlying the First Amendment right of access to criminal trials is the common understanding that a major purpose of that Amendment was to protect the free discussion

of governmental affairs."). This right is not limited to the trial itself but can apply to other criminal proceedings and records. *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1 (1986) (*Press Enterprise II*). The Supreme Court has announced that the right applies to a particular criminal proceeding if (1) that proceeding has "historically been open to the press and the general public" and (2) "public access plays a significant positive role in the functioning of the particular process in question." *Id.* at 8. If a proceeding passes this "experience and logic" test, a qualified right of access attaches to it. Under a qualified right, sealing is appropriate if it is "essential to preserve higher values" and is "narrowly tailored" to serve such ends. *Id.* at 9.

Courts have relied on these considerations to evaluate the First Amendment right of access to various aspects of the criminal prosecution process, including, for example, preliminary hearings, *voir dire* examinations of prospective jurors, plea hearings, suppression hearings, and sentencing proceedings. *See id.* (preliminary hearings); *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501 (1984) (*Press Enterprise I*) (*voir dire*); *In re: Washington Post Co.*, 807 F.2d 383 (4th Cir. 1986), (plea and suppression hearings); *In re: Hearst Newspapers, L.L.C.*, 641 F.3d 168 (5th Cir. 2011) (sentencing).

Notwithstanding its origin in criminal proceedings, courts have also applied the "experience and logic" test to determine whether a First Amendment right of access exists in a wide variety of other contexts. The test has been used, for example, to determine whether there is a right of access to civil trials, administrative hearings, deportation proceedings, and municipal planning meetings. *See Detroit Free Press v. Ashcroft*, 303 F.3d 681, 695 (6th Cir. 2002) (citing cases). The test has been further extended beyond hearings and meetings to determine whether there is a First Amendment right of access to documents and other materials. *See, e.g., Cal-Almond, Inc. v. U.S. Dep't of Agric.*, 960 F.2d 105, 109 (9th Cir. 1992) (agriculture department's voter lists); *Capital Cities Media, Inc. v. Chester*, 797 F.2d 1164, 1174-76 (3d Cir. 1986) (state agency records); *United States v. Corbitt*, 879 F.2d 224, 228-29 (7th Cir. 1989) (presentence reports).

In view of this breadth of the application of the "experience and logic" test to determine whether there is a First Amendment right of access to a particular governmental proceeding or information source, we conclude that it is appropriate to apply the test here in considering whether there should be access to documents involved with the issuing and execution of a search warrant.

Moreover, based on this broad application, we reject the government's suggestion that there is no First Amendment right of access to the search warrant documents here due to the fact that the search warrant application process is an investigative rather than a criminal proceeding. Indeed, other federal courts of appeals to consider whether there is a First Amendment right of access to documents filed in search warrant proceedings have based their decisions on the "experience and logic" test. *See In re: Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 64 (4th Cir. 1989); *Times Mirror Co. v. United States*, 873 F.2d 1210, 1213 (9th Cir. 1989). We will do the same.

### *1.       The History of Access to Search Warrant Documents*

Turning to the "experience" prong of the test, we will start with an historical inquiry. It is indisputable that proceedings for the issuance of search warrants are not, and have not been, public. Such proceedings are "necessarily *ex parte*, since the subject of the search cannot be tipped off to the application for a warrant lest he destroy or remove evidence." *Franks v. Delaware*, 438 U.S. 154, 169 (1978). To preserve this interest in secrecy, any documents filed in connection with the application process are also, by necessity, submitted confidentially. In apparent appreciation of this practice, the newspapers argue that a First Amendment right of access to such documents attaches not upon their filing but rather only after the related search is executed. We find no evidence, however, of documents filed in search warrant proceedings historically being made open to the press and public at that later point in time.

The newspapers argue to the contrary based on Rule 41(i) of the Federal Rules of Criminal Procedure. Under that rule, after a search is conducted, "the magistrate judge to whom the warrant is returned must attach to the warrant a copy of the return, of the inventory, and of all other related papers and must deliver them to the clerk in the

district where the property was seized." [2] Fed. R. Civ. P. 41(i). This rule, however, does not speak to whether the documents must be made available for public inspection, and it consequently fails to establish any tradition of public access to them.

The newspapers argue, however, that once the search warrant documents are returned to the clerk, they are routinely filed without seal. Although this may often be the situation, it is not always so. If the government determines that it has legitimate interests in preventing disclosure, the government will routinely obtain sealing orders on the materials. *See Times Mirror Co.*, 873 F.2d at 1214. Indeed, judicial officers have long respected the confidentialities involved in criminal investigations and generally afforded deference to the government's determinations on the need for secrecy. *See id.* In light of this longstanding practice, we do not interpret the fact that the government may in some instances allow documents filed after the execution of the search warrant to become public to be evidence of an historical tradition of accessibility to them.

The newspapers next turn to the common law tradition of access to judicial documents to substantiate their claim that search warrant documents have historically been accessible. *See Nixon v. Warner Commc'ns*, 435 U.S. 589, 597 (1978). This argument is unavailing. As the Supreme Court has made clear, the common law "right to inspect and copy judicial records is not absolute." *Id.* at 598. Generally, the decision as to the common law right of access to court documents is left to the sound discretion of the trial court. *See United States v. Beckham*, 789 F.2d 401, 409 (6th Cir. 1986). In deciding whether there is a common law right of access, the trial court will consider all relevant factors to determine whether the need for sealing overcomes the common law right of access. *Id.* The newspapers have not shown us any historical record of unrestricted public access to search warrant documents under the common law. We cannot accept the argument that the common law right of access supports a finding here of an analogous First Amendment right of access to search warrant documents. Moreover, in view of our discussion in Part III.A.2 *infra* of the effect on criminal

----

[2] A warrant is required to be returned to a magistrate judge designated in the warrant. Fed. R. Crim P. 41(e)(2)(A)(iii).

investigations of public access to search warrant documents, it would appear that the magistrate judge's decision to seal in this case was not an abuse of discretion and thus the sealing here was proper under the common law. The Ninth Circuit Court of Appeals has also found that the common law right of access to judicial records does not apply to search warrant documents. *See Times Mirror Co.*, 873 F.2d at 1218-19.

Finally, the newspapers cite the Fourth Amendment as evidence that there is a tradition of public access to documents filed in search warrant proceedings dating back to the adoption of the Bill of Rights in 1791. We disagree. As it relates to warrants, the Fourth Amendment establishes only that the government must obtain one (based on probable cause) before conducting a search. *See* U.S. Const. Amend. IV. The Fourth Amendment has no bearing on the question of whether documents related to the issuance of search warrants must be made available for public inspection. It therefore fails to support the newspapers' argument. *See In the Matter of EyeCare Physicians of America*, 100 F.3d 514, 517 (7th Cir. 1996) ("The Warrant Clause of the Fourth Amendment circumscribes the *issuance* of warrants, but does not address access to the affidavits employed to support them.")

In sum, we cannot conclude that there is any historical tradition of accessibility to documents filed in search warrant proceedings. That alone requires a rejection of the newspapers' contention that there is a First Amendment right of access to them. As we explain next, this conclusion is even more strongly supported by the fact that public access would not play a significant positive role in search warrant proceedings.

2.    *The Effect of Public Access to Search Warrant Documents*

In analyzing the effects of public access to documents filed in search warrant proceedings, we are mindful that those proceedings are merely one component of the criminal investigatory process. *See Times Mirror Co.*, 873 F.2d at 1214 ("The process of disclosing information to a neutral magistrate to obtain a search warrant, therefore, has always been considered an extension of the criminal investigation itself."). It is appropriate therefore to consider the effects such access would have on that larger process. As the parties agree, public access to search warrant documents prior to the

execution of a search would harm criminal investigations by enabling criminal suspects to learn of impending searches and by potentially leading them to remove or destroy evidence.

Here, however, we are dealing with access after the execution of the search warrant. We conclude that the execution of the search does not eliminate the possibility of harm from the disclosure of the information contained in the documents. First and most obviously, because the documents must detail the government's evidence of criminal activity so as to establish probable cause for a search, they would likely identify information sources, such as wiretaps and undercover operations, the continued utility of which will be compromised by disclosure. The safety of confidential witnesses may also be compromised. The publication of search warrant documents may also reveal the government's preliminary theory of the crime being investigated and enable criminal suspects to figure out which other places are likely to be searched as the investigation continues. In addition, although the execution of the search will have already served to alert the owner or occupant of the place being searched that he may be a criminal suspect, publication of search warrant documents, by revealing the extent of the government's knowledge, could alert others that they, too, are suspects and could cause them to destroy evidence or to flee.

A further concern arising from public access to search warrant documents is the fact that the government would need to be more selective in the information it disclosed in order to preserve the integrity of its investigations. This limitation on the flow of information to the magistrate judges could impede their ability to accurately determine probable cause. We are concerned also that access to the documents might reveal the names of innocent people who never become involved in an ensuing criminal prosecution, causing them embarrassment or censure.

These examples are an incomplete list of the potential harms of disclosure. There are a variety of ways in which the criminal investigatory process may be harmed by making documents filed in search warrant proceedings publicly available. The critical point is that the importance of the confidentiality necessary for criminal investigations

is well recognized, *see, e.g., EyeCare Physicians*, 100 F.3d at 517, 519; *Times Mirror Co.,* 873 F.2d at 1215; *Goetz*, 886 F.2d at 64. Publication of search warrant documents would serve only to jeopardize that interest.

The newspapers posit a number of benefits that they claim would accrue to search warrant proceedings through publication of search warrant documents. They argue that the access they seek would give assurance that established procedures are being followed in search warrant proceedings, would promote the appearance of fairness in those proceedings, and would serve as a check on the magistrate judges presiding over the proceedings. This monitoring of search warrant proceedings is already largely served, however, by the existence of remedies when searches are conducted in violation of the Fourth Amendment's Warrant Clause, *see* 42 U.S.C. § 1983; *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). In addition, a criminal defendant may seek to suppress evidence gathered in a search conducted pursuant to a defective warrant. On the other hand, the benefit of public availability of search warrant documents is only marginal. Because, in this analysis, "the value of access must be measured in specifics," *Richmond Newspapers*, 448 U.S. at 589 (Brennan, J., concurring), we find that these benefits are outweighed by the very particular harms described above that would affect the criminal investigatory process.

The newspapers further argue that access to search warrant documents would serve a therapeutic purpose and advance public participation in government. The therapeutic rationale was first cited by the Supreme Court in *Richmond Newspapers*, 448 U.S. at 570, to support its recognition of a right of access to criminal trials. As the Court stated "the open processes of justice serve an important prophylactic purpose, providing an outlet for community concern, hostility and emotion." *Id.* In *Detroit Free Press*, 303 F.3d at 704, we similarly found that the public would derive a therapeutic benefit from attendance at deportation proceedings of individuals suspected of having some connection to terrorist organizations or activities in light of the damage that had recently been done to the public psyche by the attacks of September 11. However, we fail to see the logic of the newspapers' claim that there is a therapeutic benefit that would

be served by public access to documents filed in search warrant proceedings – or even if there were such a benefit, that its value could outweigh the strong arguments we outline above against such public access.

We conclude that there is no First Amendment right of access to documents filed in search warrant proceedings.[3]   We do so based in part on the lack of any evidence that there is a historical tradition of such access and in part because that access would be detrimental to the search warrant application and criminal investigatory processes. Although the greatest risk of these harms would stem from release of the affidavits submitted in support of search warrant applications, we find that sensitive information frequently makes its way into other documents in the proceedings.  Our conclusion applies equally to those other documents.  Similarly, because docket entries are often detailed and could reveal the same sensitive information, we hold that there is no First Amendment right of access to docket sheets of search warrant proceedings.

In coming to this conclusion, we must keep in mind that, although we have found no First Amendment right to access, the common law right of access to judicial documents may in some situations permit access to search warrant proceedings.  This may occur, however, only if the district court in its discretion, as supervisor of its own records and files, finds that the public's right to know outweighs interests of privacy in sealing a particular document.  *See, e.g., Beckham*, 789 F.2d at 409.

### B.       Articulation of the Reasons Justifying the Sealing Order

The newspapers contend that the district court's order must be reversed because it failed to "make findings and conclusions specific enough to allow this Court to determine that each document should be sealed."  The responsibility for articulating the justification for sealing judicial documents has been recognized to rest, logically, with the judicial officer imposing the seal.  *See, e.g., Media Gen. Operations, Inc. v. Buchanan*, 417 F.3d 424, 429 (4th Cir. 2005).  In this case, therefore, it fell to the

---

[3]We find *In re:  Search Warrant for Secretarial Area Outside Office of Thomas Gunn*, 855 F.2d 569 (8th Cir. 1988), the only case to hold that there is a right of access to search warrant materials during ongoing investigations, to be unpersuasive.

magistrate judge who granted the government's motion to seal, not to the district judge who considered the newspapers' subsequent motion to unseal. We agree with the Fourth Circuit Court of Appeals that, because time is of the essence in search warrant proceedings, to satisfy this articulation requirement in relation to search warrant documents, "the judicial officer may explicitly adopt the facts that the government presents to justify sealing when the evidence appears credible." *Goetz*, 886 F.2d at 65. Also, if necessary, "the government's submission and the officer's reason for sealing the documents can be filed under seal." *Id.* This is precisely what transpired in this case: the government submitted a detailed affidavit in support of its motion to seal the case explaining how disclosure of the search warrant documents would harm their criminal investigation, and the magistrate judge adopted those reasons in its sealing order. We find no error in this procedure. Indeed, because the articulation requirement exists only to aid reviewing courts rather than for the benefit of the public, *see Media Gen. Operations,* 417 F.3d at 431, reversal on this basis is appropriate only where a sealing court's deficient articulation of its decision impedes review. That is not the case here, and we accordingly reject the newspapers' argument.[4]

### C.    Duration of the Sealing Order

Finally, there is no merit to the newspapers' argument that the District Court's erred in closing the case related to their motion to unseal the search warrant documents. The newspapers claim that this action resulted in an impermissibly indefinite sealing of those documents. In her sealing order, the magistrate judge specified that the seal would not be in place permanently but rather only until further order. This is recognized as acceptable procedure. *See, e.g., In re EyeCare Physicians of America*, 910 F. Supp. 414,

---

[4] The government's motion to seal, its affidavit in support of that motion, and the magistrate's sealing order enable us to comprehend the rationale for sealing the search warrant documents. We note, however, that because our consideration of whether there is a First Amendment right of access to such documents is plenary, *see Times Mirror Co. v. United States*, 873 F.2d 1210, 1212 (9th Cir. 1989), that rationale was irrelevant to our resolution of that question. The magistrate's reasons for sealing the documents would be relevant to the question of whether she abused her discretion in sealing those documents in contravention of the common law right of access, *see Beckham*, 789 F.2d at 403, but that issue was not raised on appeal. To be clear, the only issues presented for our review are whether the District Court (1) failed to make findings specific enough to allow this Court to conduct its review, (2) erred by indefinitely sealing the search warrant documents, (3) erred in sealing the docket sheet, and (4) erred in failing to recognize a First Amendment right of access to search warrant documents.

415 (N.D. Ill. 1996) ("That judicial officer is required to exercise her or his discretion in ruling on a request by the government to seal any part of the warrant papers for a specified period of time, *or until further order*.") (emphasis added).  We trust that the magistrate judge will, if appropriate, revisit the order.  That said, we find no error in the district court's closure of the case before it.

**IV.     CONCLUSION**

For the reasons explained above, we affirm the Order of the district court.