Filed 9/15/22

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| ELECTRONIC FRONTIER FOUNDATION, INC. <br><br> Plaintiff and Appellant, <br><br> v. <br><br> THE SUPERIOR COURT OF SAN BERNARDINO COUNTY, <br><br> Defendant and Respondent; <br><br> SAN BERNARDINO COUNTY DISTRICT ATTORNEY'S OFFICE et al., <br><br> Real Parties in Interest and Respondents. | E076778 <br><br> (Super. Ct. No. CIVDS1930054) <br><br> OPINION |

APPEAL from the Superior Court of San Bernardino County. Brian S. McCarville and Dwight W. Moore, Judges. Affirmed.

Electronic Frontier Foundation, Inc., and Aaron Mackey; Law Office of Michael T. Risher and Michael T. Risher, for Plaintiff and Appellant.

Neon Law Foundation and Nicholas Shook; First Amendment Coalition, Glen A. Smith, David E. Snyder and Monica N. Price as Amici Curiae on behalf of Plaintiff and Appellant.

1

No appearance for Defendant and Respondent.

Jason Anderson, District Attorney, and Mark A. Vos, Deputy District Attorney, for Real Party in Interest and Respondent, District Attorney.

Michelle D. Blakemore, County Counsel, and Miles Kowalski, Deputy County Counsel, for Real Party in Interest and Respondent, the Sheriff.

## I.

## INTRODUCTION

Between 2018 and 2020, Electric Frontier Foundation, Inc. (EFF) moved to unseal affidavits filed in support of executed search warrants requested by the San Bernardino County Sheriff's Department (the Sheriff) and issued under seal by the San Bernardino Superior Court between March 2017 and March 2018. The trial court denied EFF's motion and ordered the affidavits to remain sealed. EFF appeals, and we affirm.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

EFF is a "non-profit civil liberties organization working to protect and promote fundamental liberties in the digital world." According to EFF, cell-site simulators always collect the digital data of innocent people. "A cell-site simulator works as its name suggests—it pretends to be a cell tower on the network of the target phone's service provider. It takes advantage of the fact that a cell phone—when turned on—constantly seeks out nearby cell towers, even if the user is not making a call. Furnished with identifying information concerning the target phone, the cell-site simulator searches for

that phone. When the cell-site simulator is close enough, the target phone will connect to it as though it were a cell tower." (A.L.R. Criminal Law, Art. XVII, § 392.38(15).

EFF claims law enforcement authorities in San Bernardino County lead the state in the use of cell-site simulators. According to EFF, the Sheriff regularly seeks warrants to use cell-site simulators while moving to keep the warrants sealed indefinitely, and the San Bernardino County Superior Court (the Superior Court) largely grants the request when issuing the warrants. EFF has sought information about numerous search warrants issued by the Superior Court, but this case is about EFF's request for eight search warrants.

Because of its concerns about the use of cell-site simulators, EFF petitioned to unseal eight "search warrant packets" that contained warrants issued by the Superior Court between March 2017 and March 2018 that allowed the Sheriff to use cell-site simulators. (See Cal. Rules, rule 2.551(h)(2).[1]) EFF sought the search warrant materials "to learn more about (1) the nature of the offenses under investigation, (2) the expertise and qualities of the affiants, (3) why the affiant believes the searches will assist the investigation, (4) the nature of the information to be provided under the warrant, (5) what providers must do to comply with the warrant, and (6) reasons for seeking sealing and/or nondisclosure."

---

[1] All further references to the "Rules" are to the California Rules of Court.

3

The Sheriff and the San Bernardino County District Attorney (collectively, the County) did not object to the unsealing of one warrant packet (SBSW 18-0850), but opposed the unsealing of portions of the seven other warrant packets.

Specifically, the County argued the returns to the executed search warrants and the so-called "*Hobbs* affidavits"[2] in support of the warrants should remain sealed indefinitely, because they contain sensitive information about confidential informants (Evid. Code, § 1041) and "official information," meaning information "acquired in confidence by a public employee in the course of his or her duty and not open, or officially disclosed, to the public prior to the time the claim of privilege is made." (Evid. Code, § 1040, subd. (a).) In total, the County argued about 80 pages of information from about 120 pages of the search warrant packets should remain sealed. Under the parties' stipulation, the County provided EFF with portions of the search warrant packets that the County did not oppose unsealing. The County then moved for judgment on EFF's petition and requested that the warrant packets remain sealed except for the select portions that the County had provided to EFF.

The trial court held a hearing on the County's motion in January 2021. At the time of the hearing, the proceedings related to the eight search warrants were at different stages. All of the warrants had been executed and their related investigations had all been completed. Some of the warrants had contributed to three indictments and two convictions, while another defendant was still awaiting trial at the time of the hearing.

---

[2] *People v. Hobbs* (1994) 7 Cal.4th 948, 962 (*Hobbs*).

After a hearing on the parties' requests, the trial court denied EFF's petition and ordered the affidavits to remain sealed indefinitely.[3] The trial court found that EFF was not entitled to the release of the affidavits and, even if it were, the County had a compelling interest in keeping them sealed to protect "confidential informant identity" and investigatory "sources and methods." The court further found that nothing in the *Hobbs* affidavits could be even partially released. EFF timely appealed.

III.

DISCUSSION

EFF argues the trial court should have unsealed the search warrant affidavits under Penal Code section 1534, subdivision (a) (section 1534(a)), Rules 2.550 and 2.551, the First Amendment, the California Constitution, and common law. We disagree.

1. *EFF's Standing*

The County suggests that EFF lost standing to move to unseal the affidavits once the trial court decided that they should remain sealed. We disagree. "'A litigant's standing to sue is a threshold issue to be resolved *before* the matter can be reached on the merits. [Citation.]'" (*Troyk v. Farmers Group, Inc.* (2009) 171 Cal.App.4th 1305, 1345, italics added.) A party's standing is thus a jurisdictional issue "unrelated to the merits" of the action. (*Hudis v. Crawford* (2005) 125 Cal.App.4th 1586, 1592.) EFF, like every other member of the public, "'has a legitimate interest and right of general access to court

---

[3] The trial court also ordered that the returns to the search warrants remain sealed, but EFF does not challenge that order. EFF appeals only the trial court's order sealing the *Hobbs* affidavits.

5

records'" and thus has standing to sue to unseal the search warrants. (*Sander v. State Bar of California* (2013) 58 Cal.4th 300, 318; Rule 2.551(h)(2) ["A party or member of the public may move, apply, or petition . . . to unseal a record."].)

2. *Section 1534(a)*

Section 1534(a) provides that a warrant and its related documents need not be made public for 10 days after its issuance. "Thereafter, if the warrant has been executed, the documents and records shall be open to the public as a judicial record." (§ 1534(a).)

EFF argues that the search warrant packets had to be unsealed under section 1534(a) because the warrants had been executed long before EFF moved to unseal them. But, as the County correctly observes, the confidential informant privilege in Evidence Code section 1041 creates "an exception to [section 1534(a)]." (*Hobbs*, *supra*, 7 Cal.4th at p. 962.) Under this exception, a search warrant affidavit that contains information about a confidential informant, also known as a "*Hobbs* affidavit," may be sealed in whole or in part to protect the informant's identity. (*Id*. at pp. 971-975; *People v. Acevedo* (2012) 209 Cal.App.4th 1040, 1052.) Similarly, under Evidence Code section 1040, a public entity has a qualified right not to disclose official information if "[d]isclosure of the information is against the public interest because there is a necessity for preserving the confidentiality of the information that outweighs the necessity for disclosure in the interest of justice." (Evid. Code, § 1040, subd. (b)(2).) This privilege applies to official non-public information obtained by prosecutors and their law enforcement counterparts. (See *Wood v. Superior Court* (2020) 46 Cal.App.5th 562, 584;

6

*Shepherd v. Superior Court* (1976) 17 Cal.3d 107, 123, overruled on other grounds by

*People v. Holloway* (2004) 33 Cal.4th 96, 131.)

EFF argues we should apply the four-part test in *NBC Subsidiary (KNBC-TV, Inc.)*

*v. Superior Court* (1999) 20 Cal.4th 1178 (*NBC Subsidiary*) to determine whether the

trial court properly found the *Hobbs* affidavits should not be unsealed under section

1534(a).  But EFF does not cite, and we are unaware of, any case in which that test was

used to evaluate whether a *Hobbs* affidavit should be unsealed.[4]

On the other hand, *Hobbs* outlines a procedure trial courts must follow to

determine whether to unseal a *Hobbs* affidavit.  (*Hobbs*, *supra*, 7 Cal.4th at pp. 972-975.)

"The court's first step is to determine whether the affidavit or any major portion of it has

been properly sealed.  [Citation.]  This question entails two determinations:  'It must first

be determined whether sufficient grounds exist for maintaining the confidentiality of the

informant's identity.  It should then be determined whether the entirety of the affidavit or

any major portion thereof is properly sealed, i.e., whether the extent of the sealing is

necessary to avoid revealing the informant's identity.'  [Citation.]  If the court 'finds that

---

[4]  For instance, EFF relies heavily on *In re Marriage of Nicholas* (2010) 186 Cal.App.4th 1566, for the proposition *Hobbs* affidavits may be sealed only if *NBC Subsidiary*'s four-part test is satisfied.  But that civil proceeding did not concern sealed search warrant materials.  Noting that there is a "strong presumption . . . of public access to court records in ordinary civil trials," the court there held that "family law departments may close their courtrooms and seal their court records only in limited circumstances, and only when they expressly identify the particular facts that support the existence of *NBC Subsidiary*'s constitutional standards." (*Id*. at p. 1575.)  As explained in more detail below, orders sealing search warrant materials apply different standards given the substantive and procedural differences between civil court records and search warrant materials.

any portion of the affidavit sealed by the magistrate can be further redacted, and the remaining excerpted portion made public without thereby divulging the informant's identity, such additional limited disclosure should be ordered.' [Citation.]" (*People v. Heslington* (2011) 195 Cal.App.4th 947, 957.) Trial courts must follow a similar procedure to determine whether official information should remain sealed under Evidence Code section 1040. (See *People v. Acevedo*, *supra*, 209 Cal.App.4th at p. 1056; *People v. Bradley* (2017) 7 Cal.App.5th 607, 626; *People v. Montgomery* (1988) 205 Cal.App.3d 1011, 1021.) We are unaware of any authority that suggests the *NBC Subsidiary* test supplanted these procedures.

EFF argues, and the County agrees, that we review de novo the trial court's ruling that nothing in the *Hobbs* affidavits should be unsealed. We disagree. Our Supreme Court has held that a trial court's ruling that official information under Evidence Code section 1040 should not be disclosed is reviewed for an abuse of discretion. (See *People v. Suff* (2014) 58 Cal.4th 1013, 1059 ["A trial court has discretion to deny disclosure [of official information] . . . when the necessity for confidentiality outweighs the necessity for disclosure . . . [and its] ruling is reviewed under the abuse of discretion standard."].) The court in *Hobbs* also held that the trial court did not abuse its discretion "in conducting its own in camera review of the sealed materials [and] affirming the magistrate's determination that the sealing of the entirety of [the search warrant application] was necessary to implement the People's assertion of the informant's privilege" under Evidence Code section 1041. (*Hobbs*, *supra*, 7 Cal.4th at p. 976.)

These holdings are consistent with the court's many cases holding that a trial court's ruling that evidence is statutorily privileged and need not be disclosed is reviewed for an abuse of discretion. (E.g., *Menendez v. Superior Court* (1992) 3 Cal.4th 435, 457, fn. 18; *People v. Avila* (2006) 38 Cal.4th 491, 607.)

At oral argument, EFF vigorously argued that we should apply a de novo standard of review. But the cases EFF cited in its briefs and at oral argument are either distinguishable or unpersuasive.

The main case EFF (and the County) relies on is *People v. Jackson* (2005) 128 Cal.App.4th 1009, 1020 (*Jackson*). There, various news organizations appealed the trial court's denial of their motion to unseal various documents, including search warrant affidavits, under the predecessor to California Rule of Court, rule 2.550 in the child molestation case against pop star Michael Jackson. (*Id.* at p. 1014.) The *Jackson* court broadly read our Supreme Court's decision in *In re George T.* (2004) 33 Cal.4th 620, 634 (*George T.*) and the United States Supreme Court's decision in *Bose Corp. v. Consumers Union of U.S., Inc.* (1984) 466 U.S. 485 (*Bose*), as holding that "cases implicating First Amendment rights are subject to independent review."[5] (*Jackson*, *supra*, at p. 1021.)

---

[5] "Independent review" is not the same as de novo review. (*George T.*, *supra*, 33 Cal.4th at p. 634.) Under independent review, the appellate court defers to the trial court's credibility determinations, whereas under de novo review the appellate court "'makes an original appraisal of all the evidence to decide whether or not it believes' the outcome should have been different." (*Ibid.*) The distinction is immaterial here because the trial court did not take testimony and made no credibility determinations, so EFF argues (and we agree) that independent review is equivalent to de novo review here. (See *Jackson*, *supra*, 128 Cal.App.4th at p. 1021.)

9

But *George T.*, *Bose*, and the First Amendment cases it discussed were about whether certain speech was protected under the First Amendment. In that context, courts routinely apply independent review to resolve whether the speech at issue is constitutionally protected. (See *George T.*, *supra*, at pp. 632-634.) In *George T.*, for instance, the court had to decide whether the minor's speech was a criminal threat or lawful speech. (*Ibid.*) In *Bose*, the high court had to decide whether a magazine article was defamatory or protected speech. (*Bose*, *supra*, 466 U.S. at p. 505; *Krinsky v. Doe 6* (2008) 159 Cal.App.4th 1154, 1162 [applying independent review under *Bose* because "the appellate issue is whether a particular communication falls outside the protection of the First Amendment"].)

But neither decision concerned whether court records should be sealed or unsealed due to First Amendment concerns. Neither *George T.*, *Bose* nor the *Jackson* courts had occasion to consider Evidence Code sections 1040 or 1041 and the corresponding standard of review for a trial court's decision under either provision.

The *Jackson* court did, however, note that "'codified privileges and decisional rules together comprise an exception to [section 1534(a)'s] requirement that the contents of a search warrant . . . become a public record once the warrant is executed.'" (*Jackson*, *supra*, 128 Cal.App.4th at pp. 1022-1023, quoting *Hobbs*, *supra*, at p. 962.) *Hobbs* confirms that trial courts must exercise their "'broad discretion'" to balance these privileges and rules against other interests, such as a defendant's Fourth Amendment rights or his right to a fair trial when deciding whether to keep search warrant materials

sealed.  (*Hobbs*, 7 Cal.4th at p. 970.)  In *Hobbs*, for instance, the trial court denied a criminal defendant's motion to unseal search warrant materials on the ground that doing so would jeopardize the safety of a confidential informant even though the defendant sought the materials to challenge the legality of a search warrant.  (*Id.* at pp. 955-957.)  Our Supreme Court held the trial court properly "acted within its sound discretion" in denying the motion.  (*Id.* at p. 976.)

We discern no compelling reason why a trial court's ruling on a criminal defendant's motion to unseal search warrant materials that may show that the resulting search violated the defendant's Fourth Amendment rights should be reviewed for an abuse of discretion while a motion to unseal search warrants should be reviewed de novo when the First Amendment is implicated.  Several courts have held explicitly that a trial court's sealing order is reviewed for an abuse of discretion even when the First Amendment is at play.  (See, e.g., *United States v. Doe* (2d Cir. 1995) 63 F.3d 121, 125 [reviewing order closing court proceedings for an abuse of discretion]; *Flynt v. Lombardi* (8th Cir. 2018) 885 F.3d 508, 511 ["[W]e review the district court's ultimate decision to seal or unseal for an abuse of discretion"]; *United States v. Doe* (9th Cir. 2017) 870 F.3d 991, 996 ["[W]e review a decision whether or not to seal the judicial records for abuse of discretion"]; *In re Los Angeles Times Communications LLC* (D.C. Cir. 2022) 28 F.4th 292, 297 [same].)  We therefore respectfully disagree with the *Jackson* court's overly broad reading of *George T.* and *Bose* as holding that that *all* cases implicating the First Amendment require independent or de novo review.

11

The two other cases EFF primarily relied on in its briefs are similarly distinguishable.  Neither *Overstock.com, Inc. v. Goldman Sachs Group, Inc.* (2014) 231 Cal.App.4th 471 nor *Mercury Interactive Corp. v. Klein*, 158 Cal.App.4th 60, 81 (2007), involved search warrants, *Hobbs* affidavits, or confidential information subject to nondisclosure under Evidence Code sections 1040 or 1041.  These cases therefore do not apply here.  (*People v. Ault* (2004) 33 Cal.4th 1250, 1268, fn. 10 ["[C]ases are not authority for propositions not considered."].)

EFF emphasized at oral argument that various appellate courts have applied de novo review in "right to access" cases implicating the First Amendment.  But we must decide whether the trial court erroneously denied EFF's motion to unseal under Evidence Code sections 1040 and 1041 or whether EFF's First Amendment rights trump those statutory privileges.  Again, our Supreme Court has made clear that we review that decision for an abuse of discretion.  (See *Hobbs*, *supra*, 7 Cal.4th at p. 971; *People v. Suff*, *supra*, 58 Cal.4th at p. 1059; see also *People v. Luttenberger* (1990) 50 Cal.3d 1, 21 [trial court has discretion to order discovery concerning confidential informant's statements in warrant affidavit].)  Our colleagues in other courts of appeal have followed suit.  (See e.g., *People v. Washington* (2021) 61 Cal.App.5th 776, 794 ["We review the trial court ruling on a motion to unseal a search warrant affidavit for an abuse of discretion," citing *Hobbs*, *supra*, 7 Cal.4th at p. 976.]; *People v. Bradley* (2017) 7 Cal.App.5th 607, 620 [reviewing trial court's decision to deny disclosure of an

informant's identity under Evidence Code section 1041 for abuse of discretion]; *People v. Acevedo*, *supra*, 209 Cal.App.4th at p. 1055.)

This makes sense because when deciding whether to seal or unseal a *Hobbs* affidavit when the People invoke the protections of Evidence Code sections 1040 or 1041, the trial court must make a fundamentally discretionary decision. The court must weigh the government's interests in maintaining information confidential against the public's general right to access court records (or a criminal defendant's right to challenge a warrant). (See *Hobbs*, *supra*, 7 Cal.4th at pp. 962, 971-972; *People v. Galland* (2008) 45 Cal.4th 354, 367.) After all, "the First Amendment right of access is flexible, not absolute" and must sometimes yield to "an overriding interest," such as protecting information deemed privileged under Evidence Code sections 1040 and 1041. (See *People v. Connor* (2004) 115 Cal.App.4th 669, 697; *Hobbs*, *supra*, at pp. 962, 971-971; see also *Craemer v. Superior Court* (1968) 265 Cal.App.2d 216, 222 ["[W]here there is no contrary statute or countervailing public policy, the right to inspect public records must be freely allowed."].)

We therefore conclude the abuse-of-discretion standard is appropriate here. (See *Davis v. Superior Court* (2010) 186 Cal.App.4th 1272, 1277 ["We review the trial court's ruling concerning the disclosure of the identity of a confidential informant under the abuse of discretion standard," citing *Hobbs*, *supra*, 7 Cal.4th at p. 976; see also *People v. Bradley*, *supra*, 7 Cal.App.5th at p. 620; *People v. Kelly* (2018) 28 Cal.App.5th 886, 906.)

"To establish an abuse of discretion, [a party] must demonstrate that the trial court's decision was so erroneous that it 'falls outside the bounds of reason.' [Citations.] A merely debatable ruling cannot be deemed an abuse of discretion. [Citations.] An abuse of discretion will be 'established by "a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice. . . ."'" (*People v. Bryant, Smith, and Wheeler* (2014) 60 Cal.4th 335, 390.)

We find no abuse of discretion here. We have thoroughly reviewed the *Hobbs* affidavits and conclude that the trial court reasonably found that the information they contain is either official information under Evidence Code section 1040 or information that must remain sealed to avoid revealing a confidential informant's identity. The trial court thus reasonably found that EFF's reasons for wanting to unseal the *Hobbs* affidavits—to learn more about the Sheriff's use of cell-site simulators—do not outweigh the County's interest in protecting the official information and the identity of confidential informants contained in the affidavits. There was nothing arbitrary, capricious, or patently absurd about the trial court's rulings. (See *Jackson*, *supra*, 128 Cal.App.4th at p. 1020 [noting in dicta that if abuse of discretion standard applied to order denying motion to unseal search warrant materials, the case would be "easily resolved" because the trial courts "reflect careful and reasoned analysis and insight into the important constitutional principles involved"]; *People v. Washington*, *supra*, 61 Cal.App.5th at pp. 794-795.) We

14

therefore conclude the trial court did not abuse its discretion under section 1532(a) or Evidence Code sections 1040 and 1041 in declining to unseal the *Hobbs* affidavits.

Although we find the abuse-of-discretion standard to be the appropriate standard of review here, we would still affirm the trial court's ruling under Evidence Code sections 1040 and 1041 under a de novo or independent standard of review. Our review of the *Hobbs* affidavits and the record as a whole confirms that unsealing the affidavits "would tend to reveal the identity" of confidential informants. (*People v. Martinez* (2005) 132 Cal.App.4th 233, 242.) Thus, the *Hobbs* affidavits were "properly ordered sealed, and the court correctly denied" EFF's motion to unseal them. (*Ibid.*)

This conclusion is buttressed by our conclusion, explained in more detail below, that EFF does not have a First Amendment right to the affidavits. Given that conclusion, it follows that the trial court properly found that the County's interests in maintaining the *Hobbs* affidavits sealed as privileged under Evidence Code sections 1040 and 1041 outweighed EFF's alleged First Amendment right to the affidavits. We therefore affirm the trial court's order denying unsealing the *Hobbs* affidavits under section 1534(a) under either de novo or abuse-of-discretion review.

*3. Rules 2.550 and 2.551*

EFF also contends the trial court should have unsealed the *Hobbs* affidavits under Rules 2.550 and 2.551. We disagree.

15

Rules 2.550 and 2.551 "provide a standard and procedures for courts to use when a request is made to seal a record" or unseal a record, but they "do not apply to records that courts must keep confidential by law." (Rule 2.550, Advisory Committee Comment; *Overstock.com*, *supra*, 231 Cal.App.4th at p. 488 (*Overstock.com*) ["[T]he court must consider the same criteria pertinent to a motion to seal when ruling on a request to unseal (rule 2.551(h)(4)].). Records that must be kept confidential by law include "search warrant affidavits sealed under" *Hobbs.* (Rule 2.550, Advisory Committee Comment.) The Rules thus did not require the trial court to unseal confidential informant information protected under *Hobbs*.

The Rules also did not require the trial court to unseal official information privileged under Evidence Code section 1040. The Rules control only "'to the extent that they are not inconsistent with legislative enactments.'" (*Sara M. v. Superior Court* (2005) 36 Cal.4th 998, 1011.) The Rules thus do not override the trial court's proper finding that the official information in the *Hobbs* affidavits should remain sealed under Evidence Code section 1040.

### 4. First Amendment

EFF argues that it has a First Amendment right to have the *Hobbs* affidavits unsealed and that the privileges afforded by Evidence Code sections 1040 and 1041 must yield to that right. We disagree.

To determine whether a member of the public like EFF has a First Amendment right of access to a judicial proceeding or the documents from the proceeding, we first apply the United States Supreme Court's history and utility test. (See *NBC Subsidiary*, *supra*, 20 Cal.4th at pp. 1217-1219; *Sorenson v. Superior Court* (2013) 219 Cal.App.4th 409, 432.) Under that test, we "examine whether 1) historical experience counsels in favor of recognizing a *qualified* First Amendment right of access to the proceeding [and related documents] and 2) whether public access would play a 'significant positive role in the functioning of the particular process in question.'" (*Times Mirror Co. v. United States* (9th Cir. 1989) 873 F.2d 1210, 1213 (*Times Mirror*), quoting *Press-Enterprise Co. v. Superior Court* (1986) 478 U.S. 1, 8 (*Press-Enterprise*).) When applying this test, our review is de novo. (See *In re in the matter of The Search of Fair Finance* (6th Cir. 2012) 692 F.3d 424, 434, fn. 4 (*Fair Finance*).)

Relying on cases from jurisdictions outside of California, the County argues EFF fails the first prong of the *Press-Enterprise* test because there is no historical tradition of public access to search warrant materials. EFF contends *Jackson*, *supra*,128 Cal.App.4th 1009 applied the history and utility test and found there is a First Amendment right to sealed search warrant materials.

In *Jackson*, the trial court sealed search warrants and supporting materials to protect the privacy of minors allegedly abused by the defendant, pop star Michael Jackson. (*Jackson*, *supra*, 128 Cal.App.4th at p. 1015.) The appellant-newspaper argued the trial court made insufficient findings to support its order sealing the documents,

17

thereby violating the public's First Amendment rights. (*Id.* at p. 1017.) Jackson and county counsel argued the trial court properly balanced the parties' competing interests, but did not suggest that the newspaper had no First Amendment right to access the documents. (*Ibid.*)

The *Jackson* court noted that "most judicial proceedings and records" are presumptively open to the public under the First Amendment while observing that *NBC Subsidiary* allows a court to keep certain records under seal. (*Jackson*, *supra*, 128 Cal.App.4th at p. 1022.) Without analyzing whether the search warrant records were presumptively open to the public, the *Jackson* court affirmed, holding that the trial court's sealing order met "the standards set forth in *NBC Subsidiary*." (*Ibid.*) In other words, the *Jackson* court and parties simply assumed that the First Amendment applied to the sealed search warrants.

EFF cites no other case to support its position that the First Amendment attaches to the *Hobbs* affidavits here. The County correctly notes that no California court has directly addressed the issue, while several cases from other jurisdictions hold that there is no First Amendment right to search warrant materials and note that courts are split on the issue. (See *In re Granick* (N.D.Cal. 2019) 388 F.Supp.3d 1107, 1123 [noting that "[c]ircuit courts are split on the question whether there is a First Amendment qualified right of access to warrant materials" and that the issue "has divided the district courts"].)

18

EFF argues that the out-of-state cases the County relies on are not controlling because they did not consider whether California law (namely, section 1534(a), enacted in 1963 and the 2015 California Electronic Communications Privacy Act (Pen. Code, §§ 1546.1 et seq.)), created a tradition of public access to search warrant materials filed in California courts. But in applying the history prong of the history and utility test to search warrant materials, we consider whether there is a longstanding *national* tradition of accessibility to the materials, not whether there is a California law-based tradition. (See *Press-Enterprise*, *supra*, 478 U.S. at p. 10 ["[T]he *near uniform* practice of state and federal courts has been to conduct preliminary hearings in open court"]; *Richmond Newspapers, Inc. v. Virginia* (1980) 448 U.S. 555, 563-569; *Nixon v. Warner Communications, Inc.* (1978) 435 U.S. 589, 597, fns. 7-8; *United States v. Cohen* (S.D.N.Y. 2019) 366 F.Supp.3d 612, 628; *Seattle Times Co. v. Eberharter* (1986) 105 Wn.2d 144, 154.) This is because state law does not dictate whether a longstanding national tradition of access exists for First Amendment purposes. (*El Vocero de Puerto Rico v. Puerto Rico* (1993) 508 U.S. 147, 151 ["[T]he 'experience' test . . . does not look to the particular practice of any one jurisdiction, but instead 'to the experience in that *type* or *kind* of hearing throughout the United States"]; *Alvarez v. Superior Court* (2007) 154 Cal.App.4th 642, 655 ["California's practice of releasing postindictment grand jury transcripts when there is no reasonable likelihood of prejudice does not transmogrify a purely statutory right of access into a constitutional entitlement."]; see also *Press-Enterprise Co. v. Superior Court* (1984) 37 Cal.3d 772 [holding no First Amendment

19

right to public access to preliminary hearings in part because Penal Code section 868 allowed those hearings to be closed to public], overruled on First Amendment grounds in *Press-Enterprise*, *supra*, 478 U.S. 1, in part because of long tradition in other jurisdictions of keeping preliminary hearings open to the public].)

Moreover, there is no California-based tradition of disclosing materials that are exempt from disclosure under section 1534(a) because they are privileged under Evidence Code sections 1040 or 1041. For the reasons explained above, trial courts may properly keep such records under seal.

EFF alternatively argues that some of the cases the County relies on are distinguishable because they involved pre-indictment requests for search warrant materials, not materials concerning warrants already executed in cases where indictments have already been filed. (E.g., *Times Mirror*, *supra*, 873 F.2d 1210 [holding no First Amendment to search warrant materials "when an investigation is ongoing but before indictments have been returned"].)

But the case the County mainly relies on, *Fair Finance*, *supra*, 692 F.3d 424, held there was no First Amendment right to search warrant materials irrespective of the stage of the proceedings. In that case, the district court denied two newspapers' motion to unseal search warrant materials after the defendant had been indicted. (*Id*. at p. 428.) The Sixth Circuit affirmed, finding that there was "no evidence" that search warrant materials have "historically been [made] open to the press and public," even after the warrants had been executed. (*Id*. at p. 430.) Because there is no "historical tradition of

20

accessibility to documents filed in search warrant proceedings," the Sixth Circuit held that the newspapers had no First Amendment right to access the warrant materials.  (*Id*. at p. 431.)

While acknowledging *Fair Finance*, EFF asks us to follow *In re Search Warrant for Secretarial Area Outside Office of Gunn* (8th Cir. 1988) 855 F.2d 569 (*Gunn*), which held there is a First Amendment right to search warrant materials, even pre-execution. *Gunn* reasoned that because search warrants and supporting affidavits are traditionally filed as public records, they are generally open to the public and thus accessible under the First Amendment.  (*Id*. at p. 573.)  But *Gunn* ignored the Supreme Court's repeated observation that search warrant proceedings and materials traditionally are *not* publicly accessible.  (E.g., *United States v. United States District Court* (1972) 407 U.S. 297, 321 ["[A] warrant application involves no public or adversary proceedings:  it is an *ex parte* request before a magistrate or judge"]; *Franks v. Delaware* (1978) 438 U.S. 154, 169 [warrant proceedings are "necessarily *ex parte*, since the subject of the search cannot be tipped off to the application for a warrant lest he destroy or remove evidence"].)

As the County correctly puts it, *Gunn* is an "outlier."  As far as we are aware1, *Gunn* conflicts with every federal circuit court and all but one state court of last resort that has considered whether there is a First Amendment right to search warrant materials. (See *Fair Finance*, *supra*, 692 F.3d at p. 433, fn. 3; *Times Mirror*, *supra*, 873 F.2d at p. 1218; *Baltimore Sun Co. v. Goetz* (4th Cir. 1989) 886 F.2d 60, 64-65; *Seattle Times Co. v. Eberharter*, *supra*, 105 Wn.2d at p. 154; *Newspapers of New England, Inc. v. Clerk-*

21

*Magistrate of the Ware Division of the District Court Department & others.* (Mass. 1988)

403 Mass. 628; *State v. Cummings* (Wis. 1996) 199 Wis.2d 721, 740; *State v. Rybin*

(Neb. 2001) 262 Neb. 77, 82; see also *In re Search Warrants Issued in Connection with*

*the Investigation Into Death of Nancy Cooper* (N.C. App. 180) 200 N.C.App. 180, 189;

but see *State v. Archuleta* (Utah 1993) 857 P.2d 234, 239 [following *Gunn*].)  We

therefore join the overwhelming majority of state and federal courts and decline to follow

*Gunn*.

EFF alternatively argues that the bulk of these cases are distinguishable because

they do not involve post-execution, post-arrest, and/or post-indictment search warrant

materials.  They argue that the stage of the proceedings is sometimes dispositive, noting

that the Ninth Circuit has held that "[p]ost-investigation, however, warrant materials

'have historically been available to the public.'"  (*United States v. Business of Custer*

*Battlefield Museum & Store Located at Interstate 90, Exit 514, S. of Billings, Montana*

(9th Cir. 2011) 658 F.3d 1188, 1193 (*Custer Battlefield*).)  But that statement was in the

context of the court's analysis under the common law.  (*Ibid*.)  The Ninth Circuit

expressly declined to address the issue under the First Amendment.  (*Ibid*.)  Like the

Sixth Circuit, "[w]e cannot accept the argument that the common law right of access

supports a finding here of an analogous First Amendment right of access to search

warrant documents."  (*Fair Finance*, *supra*, 692 F.3d at p. 431; see also *In re Granick*,

*supra*, 388 F.Supp.3d at p. 1126 [noting *Custer Battlefield*'s holding but finding no First

Amendment right to post-execution warrant materials in part because there was no

22

"controlling [Ninth Circuit] authority on the issue"].)  In any event, we agree with *Fair Finance* that there is no tradition of public access to search warrant materials for First Amendment purposes irrespective of the stage of the warrant proceedings and the stage of any resulting indictment.

EFF correctly notes, however, that even without a historical tradition of accessibility to search warrant materials, we may still find there is a First Amendment right to those materials based solely on *Press-Enterprise*'s utility prong.  (*NBC Subsidiary*, *supra*, 20 Cal.4th at p. 1214, 1214, fn. 32; accord, *In re Copley Press, Inc.* (9th Cir. 2008) 518 F.3d 1022, 1026.)  As applied here, the utility prong asks whether public access to the *Hobbs* affidavits will "'play[] a significant positive role in the functioning'" of the search warrant process.  (*NBC Subsidiary*, *supra*, at p. 1206.)

*Fair Finance* considered the effects that granting access to post-execution, post-indictment search warrant materials would have on the warrant process and found that "access would be detrimental to the search warrant application and criminal investigatory processes."  (*Fair Finance*, *supra*, 692 F3d at p. 433.)  In reaching that conclusion, the Sixth Circuit made a series of observations:  "[T]he execution of the search does not eliminate the possibility of harm from the disclosure of the information contained in the documents.  First and most obviously, because the documents must detail the government's evidence of criminal activity so as to establish probable cause for a search, they would likely identify information sources, such as wiretaps and undercover operations, the continued utility of which will be compromised by disclosure.  The safety

23

of confidential witnesses may also be compromised.  The publication of search warrant documents may also reveal the government's preliminary theory of the crime being investigated and enable criminal suspects to figure out which other places are likely to be searched as the investigation continues.  In addition, although the execution of the search will have already served to alert the owner or occupant of the place being searched that he may be a criminal suspect, publication of search warrant documents, by revealing the extent of the government's knowledge, could alert others that they, too, are suspects and could cause them to destroy evidence or to flee.  [¶]  A further concern arising from public access to search warrant documents is the fact that the government would need to be more selective in the information it disclosed in order to preserve the integrity of its investigations.  This limitation on the flow of information to the magistrate judges could impede their ability to accurately determine probable cause.  We are concerned also that access to the documents might reveal the names of innocent people who never become involved in an ensuing criminal prosecution, causing them embarrassment or censure.  [¶] These examples are an incomplete list of the potential harms of disclosure.  There are a variety of ways in which the criminal investigatory process may be harmed by making documents filed in search warrant proceedings publicly available.  The critical point is that the importance of the confidentiality necessary for criminal investigations is well recognized [citations].  Publication of search warrant documents would serve only to jeopardize that interest." (*Fair Finance*, *supra*, 692 F.3d at p. 432.)

These observations apply equally here. We also agree with the Sixth Circuit that "the greatest risk of these harms would stem from [the] release of the affidavits submitted in support of search warrant applications." (*Fair Finance*, *supra*, 692 F.3d at p. 433.) Although granting EFF access to the *Hobbs* affidavits likely would provide some public benefits, such as enabling greater public oversight of County law enforcement, "these benefits are outweighed by the very particular harms described above that would affect the criminal investigatory process." (*Id*. at p. 433.)

We therefore conclude EFF has not satisfied the utility prong of the *Press-Enterprise* test. Because EFF fails both prongs of that test, EFF does not have a First Amendment right to the *Hobbs* affidavits. As a result, we need not determine whether the trial court properly kept the records sealed under *NBC Subsidiary*.

But, even if EFF had a qualified First Amendment right to the *Hobbs* affidavits, the trial court properly kept them sealed under *NBC Subsidiary*'s four-part test that EFF urges us to apply here. Under that test, the *Hobbs* affidavits may be sealed only if the trial court "expressly finds (i) there exists an overriding interest supporting . . . sealing; (ii) there is a substantial probability that the interest will be prejudiced absent . . . sealing; (iii) the proposed . . . sealing is narrowly tailored to serve the overriding interest; and (iv) there is no less restrictive means of achieving the overriding interest." (*NBC Subsidiary*, *supra*, 20 Cal.4th at pp. 1217-1218, fns. omitted.)

As for the first prong, the trial court correctly found that protecting the identities of confidential informants and the confidentiality of law enforcement investigatory practices is an "'overriding interest'" supporting sealing. (See *NBC Subsidiary*, *supra*, 20 Cal.4th at p. 1222, fn. 46, citing Fenner & Koley, *Access to Judicial Proceedings: To Richmond Newspapers and Beyond* (1981) 16 Harv. C.R.-C.L. L. Rev. 426, 443 ["A third category of countervailing interests encompasses the preservation of confidential investigative information, both general information regarding investigative procedures and specific information regarding ongoing investigations," fn. omitted.)

We agree with the trial court that those interests would be prejudiced if the *Hobbs* affidavits were unsealed. "We enter into this analysis keeping in mind that assessing the likely effect of an event by its nature calls for speculation." (*In re Willon* (1996) 47 Cal.App.4th 1080, 1100.) But it is probable that confidential informants could be identified, even if their names remained redacted as EFF requests, by piecing together other, unredacted information in the affidavits. The County's "confidential investigatory information" necessarily would be revealed if the affidavits were unsealed given that they contain detailed information about the circumstances and investigations that led County law enforcement to seek search warrants.

The trial court also properly found that all of the *Hobbs* affidavits had to remain sealed and that even select portions of them could not be unsealed. "[R]edacting individual facts from the search warrant affidavit[s] is impossible. Benign information is inextricably intertwined with prejudicial information." (*Jackson*, *supra*, 128 Cal.App.4th

26

at p. 1026.)  Limited redaction therefore may not sufficiently guard the overriding interests that justify sealing the *Hobbs* affidavits.  (See *Goff v. Graves* (8th Cir. 2004) 362 F.3d 543, 550.)

Although not every single line of the *Hobbs* affidavits contains confidential information, the affidavits are full of information about confidential informants, facts learned from those informants, and information about the County's investigations and investigatory techniques.  Redacting all of the confidential information in the affidavits "would yield, at best, unintelligible paragraphs." (*Jackson*, *supra*, 128 Cal.App.4th at p. 1028.)  Thus, a "line-by-line redaction" of the affidavits is "not practicable." (*Gunn*, *supra*, 855 F.2d at p. 574.)  "[E]ffective, efficient, and fair procedures must be employed. [Citation.]  Access only to those portions of the [*Hobbs* affidavits] that do not contain the implicated information would be a Pyrrhic victory for access, with little benefit to the functioning of the system." (*United States v. Gonzales* (10th Cir. 1998) 150 F.3d 1246, 1261.)

In short, even if the *NBC Subsidiary* test applies here, the trial court's order satisfied it.  The trial court therefore properly sealed the *Hobbs* affidavits under *NBC Subsidiary*.

5. *California Constitution*

EFF next argues that it has a right to the *Hobbs* affidavits under article I, section 2 and section 3, subdivision (b) of the California Constitution (sections 2[6] and 3(b)), our state's corollary to the First Amendment. We disagree.

Section 2 provides "broad access rights to judicial hearings and records." (*Copley Press, Inc. v. Superior Court* (1992) 6 Cal.App.4th 106, 111.) Section 3(b)(1) provides: "The people have the right of access to information concerning the conduct of the people's business, and, therefore, the meetings of public bodies and the writings of public officials and agencies shall be open to public scrutiny." Section 3(b)(2) states that "[a] statute, court rule, or other authority, including those in effect on the effective date of this subdivision, shall be broadly construed if it furthers the people's right of access, and narrowly construed if it limits the right of access." Under these constitutional mandates, "we must interpret the sealed records rules broadly to further the public's right of access" unless there is "a clear requirement otherwise." (*Overstock.com*, *supra*, 231 Cal.App.4th at p. 495.)

Section 3(b), however, has an exception that EFF overlooks. Section 3(b)(5) provides that section 3(b), enacted in 2005, "does not repeal or nullify . . . any constitutional or statutory exception to the right to public records . . . including . . . any statute protecting the confidentiality of law enforcement and prosecution records."

---

[6] Section 2, subdivision (a) provides in full: "Every person may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of this right. A law may not restrain or abridge liberty of speech or press."

28

Section 3(b) therefore does not override the exemptions from disclosure granted to search warrant materials under section 1534(a), the Evidence Code, the Rules, or the First Amendment.  As a result, section 3(b) does not alter our conclusion above that the trial court properly sealed the *Hobbs* affidavits for the reasons discussed above.

Section 2 likewise does not affect that conclusion.  Although "in both language and scope it is broader than the First Amendment," (*San Jose Mercury-News v. Municipal Court* (1982) 30 Cal.3d 498, 508), it has not been interpreted "as providing an equally extensive right of public access to court proceedings, even in criminal cases." (*NBC Subsidiary*, *supra*, 20 Cal.4th at p. 1197, fn. 13.)  For instance, our Supreme Court held that the California Constitution does not guarantee public access to preliminary hearings in criminal court.  (*Press-Enterprise Co. v. Superior Court*, *supra*, 37 Cal.3d 772, overruled on other grounds in *Press-Enterprise*, *supra*, 478 U.S. 1.)  The United States Supreme Court reversed, holding that the First Amendment mandated access. (*Press-Enterprise*, *supra*, 478 U.S. 1.)  The high court thus held that the First Amendment granted the public right to access preliminary hearing proceedings that were otherwise closed to the public under the California Constitution.

Across the nation, preliminary hearings have been traditionally open to the public while search warrant proceedings usually have been (and remain) ex parte proceedings closed to the public.  (See *El Vocero de Puerto Rico v. Puerto Rico*, *supra*, 508 U.S. at pp. 150-151 ["The established and widespread tradition of open preliminary hearings among the States . . . ."]; *United States v. United States District Court*, *supra*, 407 U.S. at

29

p. 321.)  Given our conclusion that EFF has no First Amendment right to the *Hobbs* affidavits, which were filed and sealed in a closed, ex parte criminal proceeding, it follows that the California Constitution does not require granting EFF access to the affidavits either.  (See *ibid.*)

6.  *Common Law*

Lastly, EFF argues it has a right to the *Hobbs* affidavits under the common law. "'Common law rights provide the press and the public with less access than First Amendment rights,' and the decision to seal or grant access to warrant papers is "'committed to the sound discretion of the judicial officer who issued the warrant."'" (*Overstock.com*, *supra*, 231 Cal.App.4th at p. 490; accord, *Custer Battlefield*, *supra*, 658 F.3d at p. 1197, fn. 7 ["The First Amendment is generally understood to provide a stronger right of access than the common law."].)  Because we conclude the trial court properly denied EFF access to the *Hobbs* affidavits under the First Amendment, the court did not abuse its discretion by denying EFF access under common law.

IV.

DISPOSITION

The trial court's order denying EFF's petition to unseal the *Hobbs* affidavits is affirmed.[7]

CERTIFIED FOR PUBLICATION

CODRINGTON
J.

We concur:

RAMIREZ
P. J.

MILLER
J.

---

[7] We need not and do not consider the County's argument that the trial court erroneously declined to consider prosecutor Christine Masonek's declaration.